No. 26-3395

# In the United States Court of Appeals for the Sixth Circuit

ZACHARY KNOTTS; and LINDSAY KNOTTS,

*Plaintiffs–Appellants,*

*v.*

The CITY OF CUYAHOGA FALLS; DYLAN PARATORE, in his individual and official capacities; and BRADFORD DOBNEY, in his individual and official capacities,

*Defendants–Appellees.*

On Appeal from the United States District Court
for the Northern District of Ohio, No. 5:25-cv-01120 (Adams, J.)

## Plaintiffs-Appellants' Opening Brief

Geoffrey R. Surtees
**AMERICAN CENTER**
  **FOR LAW & JUSTICE**
P.O. Box 60
New Hope, KY 40052
Tel: (502) 827-0951

Stuart J. Roth
Andrew J. Ekonomou
Christina A. Compagnone
Nathan J. Moelker
Liam R. Harrell
**AMERICAN CENTER**
  **FOR LAW & JUSTICE**
201 Maryland Ave. NE
Washington, DC 20002
Tel: (202) 546-8890
Email: lharrell@aclj.org
*Counsel for Plaintiffs-Appellants*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Sixth Circuit

Case Number: 26-3395

Case Name:

Zachary Knotts; and Lindsay Knotts v. The City of Cuyahoga Falls; Bradford Dobney, in his individual and official capacities; and Dyland Paratore, in his individual and official capacities.

Name of Counsel: Liam R. Harrell

Pursuant to 6th Cir. R. 26.1, the Plaintiffs-Appellants Zachary Knotts and Lindsay Knotts make the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

   No.

/s/ Liam R. Harrell
Liam R. Harrell
AMERICAN CENTER FOR LAW &
   JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Tel: (202) 546-8890
Email: lharrell@aclj.org

Dated: June 22, 2026                    *Counsel for Plaintiffs-Appellants*

i

## **TABLE OF CONTENTS**

CORPORATE AND FINANCIAL DISCLOSURE................................................i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES.................................................................. iv

STATEMENT REGARDING ORAL ARGUMENT ...........................................x

STATEMENT OF JURISDICTION ......................................................................1

STATEMENT OF THE ISSUES ..........................................................................1

INTRODUCTION..................................................................................................2

STATEMENT OF THE CASE..............................................................................4

SUMMARY OF ARGUMENT...........................................................................10

STANDARD OF REVIEW .................................................................................14

ARGUMENT ......................................................................................................15

    I.    The District Court Erred by Dismissing the Facial Challenge to Cuyahoga Falls Ordinance § 509.03(a)(6) (Count I). ............................................................................15

        A.    The Ordinance is Speaker-based on Its Face, Reflecting a Content-based Purpose, and is Therefore Subject to Strict Scrutiny. ..............................................16

        B.    Even if Intermediate Scrutiny Were to Apply, Plaintiffs Plausibly Alleged That the Ordinance is Not Narrowly Tailored and Does not Leave Open Ample Alternative Channels......................................................26

    II.    The District Court Erred in Dismissing the As-Applied Viewpoint Discrimination Claim (Count III). ...........................30

A.     The Well-pleaded Allegations Establish That the Ordinance Was Enforced Against Plaintiffs Because of Their Pro-life Viewpoint. ........................................... 31

B.     The Complaint Plausibly Alleges Municipal Liability Through Ratification, Custom, and Viewpoint-Based Enforcement. ........................................... 36

C.     The District Court Erred in Dismissing the Individual-Capacity Claims Against Dobney and Paratore. .................... 45

    1.     The Complaint Specifically Alleges Each Officer's Personal Involvement in the Violation. ............................... 45

    2.     Any Qualified Immunity Basis for Dismissal Was Error. ................................................................................. 48

III.    The District Court Mischaracterized Plaintiffs' Equal Protection Claim (Count V). ........................................ 50

IV.    Plaintiffs Have Adequately Pleaded a Free Exercise Claim (Count IV) ........................................ 54

V.     Supplemental Jurisdiction over Plaintiffs' State Claims, Counts VI through VIII. ........................................ 58

VI.    The District Court Abused Its Discretion in Dismissing Plaintiffs' Federal Claims with Prejudice. ........................ 59

CONCLUSION ........................................................................ 63

CERTIFICATE OF COMPLIANCE ................................................ 64

CERTIFICATE OF SERVICE ........................................................ 65

DESIGNATION OF COURT DOCUMENTS .................................... 66

ADDENDUM ............................................................................ 67

# TABLE OF AUTHORITIES

**Cases**

*Amelkin v. McClure,*
205 F.3d 293 (6th Cir. 2000) ....................................................................36

*Ark. Writer's Proj., Inc. v. Ragland,*
481 U.S. 221 (1987) ..................................................................................21

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................40

*Atkinson v. Morgan Asset Mgmt., Inc.,*
658 F.3d 549 (6th Cir. 2011) ....................................................................15

*Barr v. Am. Ass'n of Pol. Consultants,*
591 U.S. 610 (2020) ............................................................................17, 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..................................................................................57

*Bible Believers v. Wayne Cnty.,*
805 F.3d 228 (6th Cir. 2015) (en banc) ..............................................15, 34

*Billiards & Brews, LLC v. City of Knoxville,* No. 3:23-CV-181,
2024 U.S. Dist. LEXIS 163606 (E.D. Tenn. Sept. 11, 2024)....................48

*Cavin v. Mich. Dep't of Corr.,*
927 F.3d 455 (6th Cir. 2019) ....................................................................25

*Citizens United v. FEC,*
558 U.S. 310 (2010) ............................................................................17, 18

*City of Ladue v. Gilleo,*
512 U.S. 43 (1994) ............................................................................28, 29

*Coley v. Lucas Cnty.,*
    799 F.3d 530 (6th Cir. 2015) .................................................................41

*Cutter v. Wilkinson,*
    544 U.S. 709 (2005) ...........................................................................26

*Employment Div., Dep't of Human Res. of Or. v. Smith,*
    494 U.S. 872 (1990) ...........................................................................55

*FEC v. Wisc. Right to Life Inc.,*
    551 U.S. 449 (2007) ...........................................................................17

*First Nat'l Bank of Bos. v. Bellotti,*
    435 U.S. 765 (1978) .....................................................................31, 42

*Foman v. Davis,*
    371 U.S. 178 (1962) ...........................................................................61

*Frederick Douglass Found., Inc. v. District of Columbia,*
    82 F.4th 1122 (D.C. Cir. 2023) .........................................................42

*Freed v. Thomas,*
    81 F.4th 655 (6th Cir. 2023) .............................................................48

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021) .....................................................................55, 56

*Green Genie, Inc. v. City of Detroit,*
    63 F.4th 521 (6th Cir. 2023) .............................................................52

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ...........................................................................48

*Harrington v. City of Brentwood,*
    726 F.3d 861 (6th Cir. 2013) .............................................................28

*Hoye v. City of Oakland,*
    653 F.3d 835 (9th Cir. 2011) .............................................................36

*Iancu v. Brunetti,*
    588 U.S. 388 (2019) ................................................................42

*Int'l Outdoor, Inc. v. City of Troy,*
    974 F.3d 690 (6th Cir. 2020) ...............................................25

*Ison v. Madison Local Sch. Dist. Bd. of Educ.,*
    3 F.4th 887 (6th Cir. 2021) ..................................................49

*Kennedy v. Benson,*
    119 F.4th 464 (6th Cir. 2024) ..............................................29

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022) ..........................................................55, 57

*Kottmyer v. Maas,*
    436 F.3d 684 (6th Cir. 2006) ...............................................14

*Leach v. Shelby Cnty. Sheriff,*
    891 F.2d 1241 (6th Cir. 1989) .............................................41

*Marks v. Newcourt Credit Grp., Inc.,*
    342 F.3d 444 (6th Cir. 2003) ...............................................14

*Matal v. Tam,*
    582 U.S. 218 (2017) ..........................................................31, 43

*McCullen v. Coakley,*
    573 U.S. 464 (2014) .............................................................27

*Meriwether v. Hartop,*
    992 F.3d 492 (6th Cir. 2021) ...............................................54

*Mich. Surgery Inv., LLC v. Arman,*
    627 F.3d 572 (6th Cir. 2010) ...............................................60

*Michigan v. DeFillippo,*
    443 U.S. 31 (1979) ...............................................................48

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ..................................................36, 39, 43

*Newberry v. Silverman*, 1:14-cv-00313
   (S.D. Ohio Apr. 24, 2014) ...............................................60

*Newberry v. Silverman*,
   789 F.3d 636 (6th Cir. 2015) ......................................59, 60

*Nieves v. Bartlett*,
   587 U.S. 391 (2019) .........................................................45

*Norton Outdoor Advert., Inc. v. St. Bernard*,
   99 F.4th 840 (6th Cir. 2024) ............................................16

*Nylen v. City of Grand Rapids*,
   475 F. Supp. 3d 744 (W.D. Mich. 2019) ....................26, 28

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) .........................................................37

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996) .........................................................58

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ....................................16, 17, 18, 23

*Riley v. Nat'l Fed'n of Blind, Inc.*,
   487 U.S. 781 (1988) .........................................................29

*Roman Catholic Diocese v. Cuomo*,
   592 U.S. 14 (2020). .........................................................55

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) ...............................................30, 31, 43

*Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*,
   56 F.4th 400 (6th Cir. 2022) ......................................16, 27

*Sorrell v. IMS Health Inc.,*
 564 U.S. 552 (2011) ..................................................................................18

*Stemler v. City of Florence,*
 126 F.3d 856 (6th Cir. 1997) ...............................................................34, 43, 51

*Turner Broad. Sys., Inc. v. FCC,*
 512 U.S. 622 (1994) ..............................................................................18, 23

*Turner v. Scott,*
 119 F.3d 425 (6th Cir. 1997) ......................................................................46

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,*
 342 F.3d 634 (6th Cir. 2003) ......................................................................59

*United States v. Seeger,*
 380 U.S. 163 (1965) ..................................................................................57

*Vanderkodde v. Mary Jane M. Elliott, P.C.,*
 951 F.3d 397 (6th Cir. 2020) ......................................................................26

*Veneklase v. Bridgewater Condos, L.C.,*
 670 F.3d 705 (6th Cir. 2012) ......................................................................59

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
 429 U.S. 252 (1977) ..................................................................................52

*Village of Willowbrook v. Olech,*
 528 U.S. 562 (2000) ..................................................................................51

*Ward v. Rock Against Racism,*
 491 U.S. 781 (1989) ..................................................................................26

*Wayte v. United States,*
 470 U.S. 598 (1985) ...............................................................................33, 43

*Wesley v. Campbell,*
 779 F.3d 421 (6th Cir. 2015) ......................................................................49

*Ysursa v. Pocatello Educ. Ass'n*,
  555 U.S. 353 (2009) ........................................................................15

*Yuhasz v. Brush Wellman, Inc.*,
  341 F.3d 559 (6th Cir. 2003) ..........................................................15

*Zillow, Inc. v. Miller*,
  126 F.4th 445 (6th Cir. 2025) ........................................................36

### Statutes

28 U.S.C. § 1331 ..................................................................................1

28 U.S.C. § 1343 ..................................................................................1

28 U.S.C. § 1367 ............................................................................58, 59

Cuyahoga Falls Ordinance § 509.03 ....................................17, 19, 24, 34, 55, 56

### Rules

Fed. R. Civ. P. 15 ..............................................................................61

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs–Appellants respectfully request oral argument. This appeal presents significant questions regarding the First Amendment's treatment of speaker-based exemptions in municipal noise ordinances, the standards for pleading and proving viewpoint discrimination through selective enforcement in traditional public forums, and the propriety of dismissing constitutional claims with prejudice on an unamended complaint. Oral argument would assist the Court in addressing the interplay between the facial and as-applied challenges, the district court's characterization of the Ordinance's exemptions, and the proper application of pleading standards in § 1983 cases involving core speech and religious-liberty rights.

x

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction because Plaintiffs appeal from a final order disposing of all their claims following a grant of a motion to dismiss. 28 U.S.C. § 1291. The final decision appealed was entered on March 31, 2026. Judgment, R. 25. Plaintiffs timely filed their notice of appeal on April 29, 2026. Notice of Appeal, R. 26.

## STATEMENT OF THE ISSUES

The issues presented are:

(1) Whether the district court erred in dismissing Plaintiffs' constitutional claims against Defendants.

(2) Whether the district court erred in dismissing the individual capacity claims against Officers Dobney and Paratore.

(3) Whether the district court erred at the pleading stage by failing to credit the Complaint's well-pleaded allegations as true and draw all reasonable inferences in Plaintiffs' favor.

1

(4) Whether the district court abused its discretion by dismissing Plaintiffs' federal claims with prejudice and without affording Plaintiffs an opportunity to amend.

## INTRODUCTION

This appeal presents a straightforward but fundamental First Amendment question: whether a city may selectively restrict ordinary citizens' speech in a traditional public forum while granting institutional speakers broad exemptions to amplify their own messages, and then enforce that regime in a viewpoint-discriminatory manner. The case involves two ordinary citizens who went to a public sidewalk in Cuyahoga Falls, Ohio, to speak about a matter of deep moral and religious conviction and were told, in effect, that their speech was less welcome than the speech of favored institutional speakers.

On December 28, 2024, Zachary and Lindsay Knotts stood on the public sidewalk outside an abortion clinic, as they had done on prior Saturdays, to advocate for the protection of unborn life. Mr. Knotts used a small, battery-powered megaphone so that his message could be heard over

2

passing traffic. Abortion clinic escorts, also present on the sidewalk, used whistles, kazoos, and umbrellas to drown out the Knotts' speech and to harass them. A nearby resident called the police to complain, not about the escorts' instruments, but about Mr. Knotts' pro-life message. When officers arrived, the megaphone's batteries had already died. They had never seen Mr. Knotts use it. They spoke only to an off-duty officer working as private security for the clinic, ignored Mrs. Knotts's complaints about the escorts' ongoing threats and noise, and cited and arrested only Mr. Knotts. As he was being detained, the supervising sergeant told Mrs. Knotts that her husband would be arrested again if he caused "annoyance" in the future, with or even without any amplification device.

Plaintiffs allege that the City violated the First Amendment in two mutually reinforcing ways: by enforcing an ordinance that favors certain institutional speakers on its face, and by applying that ordinance to suppress Plaintiffs' pro-life, religiously motivated speech while tolerating comparable or greater noise from opposing speakers. The district court nevertheless dismissed all federal claims with prejudice at the pleading stage, without

3

crediting Plaintiffs' well-pleaded allegations or affording them any opportunity to amend. The decision below should be reversed.

## STATEMENT OF THE CASE

Plaintiffs Zachary Knotts and Lindsay Knotts are pro-life advocates who regularly engage in sidewalk counseling and religious speech on the public sidewalk outside the Northeast Ohio Women's Center ("NEOWC"), an abortion clinic in Cuyahoga Falls, Ohio. They do so pursuant to sincere religious convictions that compel them to advocate for the protection of unborn life. Complaint, R. 1, Page ID # 2, 4, 7.

The City of Cuyahoga Falls enforces Ordinance § 509.03(a)(6) (hereinafter "the Ordinance"), which prohibits any person from recklessly causing inconvenience, annoyance, or alarm by generating unreasonable noise through a sound-amplifying device or musical instrument. However, the Ordinance contains explicit exemptions that favor certain speakers over others, specifically exempting "live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any educational, charitable, governmental or religious

4

organization." *Id.* § 509.03(a)(6)(B)(2). This exemption is not geographically limited; it applies whenever the event is conducted under the auspices of a favored organization, regardless of location. Complaint, R. 1, Page ID # 5, 11.

On December 7, 2024, Mr. Knotts visited NEOWC and spoke with abortion clinic escorts. No enforcement action was taken against him. *Id.*, Page ID # 6–7. During this visit, Mr. Knotts told the escorts that his mother-in-law considered getting an abortion while pregnant with Mrs. Knotts. *Id.* He explained that according to pro-abortion logic, Mrs. Knotts "should be dead." *Id.* In response, an escort said, "we can fix that." *Id.* A police officer was present and witnessed this conduct and took no action. *Id.* Another clinic escort spat on the Knotts, again with no response by law enforcement. *Id.*

Beginning December 14, 2024, the Knotts began regularly engaging in sidewalk advocacy at the clinic. *Id.*, Page ID # 7. To effectively communicate their message amid surrounding traffic noise, the Knotts use a small battery-operated megaphone. *Id.*, Page ID # 2, 7–8. Even with the megaphone, their message is easily drowned out by nearby vehicle traffic. *Id.*, Page ID # 8. Without amplification, the Knotts cannot reach their intended audience due

to the ambient noise levels. When the Knotts first began their sidewalk advocacy, the police department was initially confused about the proper interpretation of the Ordinance and gave Mr. Knotts assurances that his use of modest amplified sounds would not violate the Ordinance. *Id.*, Page ID # 6. The Knotts engaged in their activity at NEOWC specifically because of these assurances. *Id.*

On December 28, 2024, the Knotts returned to the public sidewalk outside NEOWC. *Id.*, Page ID # 7. Several abortion clinic escorts were also present and used whistles, kazoos, and umbrellas to drown out the Knotts' speech and to harass them. *Id.*, Page ID # 7–8. On numerous occasions, police had witnessed abortion clinic escorts using noise amplification devices and playing music without taking any enforcement action. *Id.*, Page ID # 3. The escorts' amplified sounds were intentionally deployed as counter-speech, creating "annoying" noise that falls squarely within the Ordinance's prohibition against generating "unreasonable noise" that causes "inconvenience" or "annoyance." *Id.*, Page ID # 8. The escorts directed threats at the Knotts, including telling Mr. Knotts to "suck start a shotgun."

*Id.* The escorts "also repeatedly harassed Mr. and Mrs. Knotts by shoving their umbrellas in the Knotts' faces." *Id.* Mrs. Knotts recorded the events. *Id.*, Page ID # 7–8. Although Mr. Knotts used a small megaphone to be heard, his megaphone was not substantially louder than the sound of surrounding traffic, and was easily drowned out by the sound of traffic and the escorts' whistles and kazoos. *Id.*

A nearby resident heard Mr. Knotts using the megaphone and called the police to complain about the noise from his pro-life message. *Id.* The resident did not complain about the escorts' instruments. *Id.* The caller did reference Mr. Knotts's pro-life message. *Id.* The Complaint expressly alleges that "[t]he resident did not call to complain about the escorts' whistles and kazoos, only Mr. Knotts' pro-life message." *Id.* Accepting Plaintiffs' well-pleaded allegations as true, as required on a motion to dismiss, the court should not have directly resolved this factual dispute against Plaintiffs, concluding that "the neighbor's complaint could not have been based on the content of the speech, but rather the amplification." Opinion, R. 24, Page ID # 249.

7

By the time Defendants Sergeant Bradford Dobney and Officer Dylan Paratore arrived, Mr. Knotts's megaphone had run out of batteries. Neither officer personally witnessed him using the device. Complaint, R. 1, Page ID # 8, 9. Dobney was well aware of the pro-life views of Plaintiffs and the differing viewpoints present outside NEOWC. *Id.*, Page ID # 9. The officers spoke only with an off-duty Cuyahoga Falls police officer working as private security for the clinic, questioned no other witnesses, and took no action on Mrs. Knotts's complaints about the escorts' threats and noise-making. *Id*. They detained Mr. Knotts and issued him a citation. *Id*. Mr. Knotts was charged with violating the noise ordinance. *Id.*

While Mr. Knotts was detained, Dobney told Mrs. Knotts that her husband would be arrested again if he caused "annoyance" in the future, with or without amplified sound. *Id*. The discriminatory treatment extended beyond the arrest itself. When Mrs. Knotts attempted to file complaints about the abortion clinic escorts' threatening conduct and noise violations, officers dismissed her concerns and stated the threats were "not a crime." *Id.*, Page ID # 7, 9. The Knotts had complained about the escorts' noise (which was

8

intentionally loud enough to drown out the Knotts' megaphone) and threats against them, but Defendants took no action. *Id.*, Page ID # 3, 8–9.

The case was transferred to Stow Municipal Court. *Id*. Mr. Knotts appeared with counsel prepared for trial on May 9, 2025. On the day of trial, the government dismissed the charges. *Id*.

Since the incident, the Knotts have continued their sidewalk advocacy but have refrained from using amplification out of fear of further enforcement. *Id.*, Page ID # 16.

Plaintiffs filed their Verified Complaint asserting eight counts, including a facial challenge to the Ordinance (Count I), an as-applied viewpoint discrimination claim (Count III), a Free Exercise claim (Count IV), and an Equal Protection claim (Count V), and ancillary state counts.[1] Complaint, R. 1. They also moved for a preliminary injunction. Motion for Preliminary Injunction, R. 3. Defendants filed a partial motion to dismiss the federal claims. Partial Motion to Dismiss, R. 16. The district court granted

---

[1] Plaintiffs do not appeal the dismissal of Count II of the Complaint, vagueness in violation of due process.

the motion and dismissed Counts I through V with prejudice. Opinion, R. 24. It declined to exercise supplemental jurisdiction over the state-law claims and dismissed those claims without prejudice. *Id*. Plaintiffs timely appealed. Notice of Appeal, R. 26.

## **SUMMARY OF ARGUMENT**

The district court erred in dismissing Plaintiffs' federal claims with prejudice on their original complaint. The Ordinance is unconstitutional on its face, and Defendants enforced it against Plaintiffs in a viewpoint-discriminatory manner. Each of the appealed counts states a viable claim.

First, the Ordinance is content-based on its face because it does not impose a generally applicable restriction on amplified sound. On its face, Cuyahoga Falls Ordinance § 509.03(a)(6) prohibits "unreasonable noise" generated by amplification devices or musical instruments. But it carves out a broad exemption for "live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization." *Id.* § 509.03(a)(6)(B)(2). That exemption does not turn on where the sound is

10

made. It turns on who is making it. A religious organization, a school, a charity, or the government itself may amplify sound anywhere in the City—so long as the event is conducted "under [their] auspices." An individual citizen standing on a public sidewalk has no such license. The district court dismissed the Knotts' facial challenge by characterizing the exemption as a mere "location" rule. It is not. It is a speaker-based preference that the Supreme Court has repeatedly held triggers strict scrutiny.

The Ordinance cannot survive that scrutiny because the City's asserted interest in preventing inconvenience and annoyance is not compelling and because the Ordinance's sweeping exemptions for favored speakers render it fatally underinclusive. Even if intermediate scrutiny applied, the Ordinance fails *Ward* because it does not leave open ample alternative channels for Plaintiffs to reach their intended audience on the public sidewalk outside the clinic.

Second, Plaintiffs sufficiently alleged an as-applied viewpoint discrimination claim. The Complaint alleges that abortion clinic escorts used whistles, kazoos, and other instruments, in potential violation of the law, to

11

drown out Plaintiffs' speech while making threats and physically interfering with them. Despite this comparable—and often louder—conduct occurring in plain view of the officers, only Mr. Knotts was cited and arrested. Dobney then expressly threatened future arrest for causing "annoyance" with or without amplification. Moreover, the City then continued an ongoing prosecution for months despite this evidence of unequal enforcement. The district court treated the viewpoint claim as essentially duplicative of the facial challenge and concluded that this was not a "heckler's veto" case because the officers responded to a single resident's noise complaint rather than a violent mob. That analysis misses the point. These well-pleaded facts establish that enforcement was driven by hostility to Plaintiffs' pro-life viewpoint. The district court improperly collapsed this distinct as-applied claim into the facial challenge and mischaracterized Plaintiffs' argument.

Third, the district court erred in characterizing Plaintiffs' Equal Protection claim as a repackaged substantive due process claim and dismissing it as duplicative of the First Amendment counts. In reality, the Equal Protection claim alleges classic selective enforcement under the Equal

Protection Clause: Plaintiffs were treated differently from similarly situated abortion escorts who engaged in comparable noise-making at the same time and place, with the only material difference being viewpoint.

Fourth, the Free Exercise claim was improperly dismissed. The Ordinance is not neutral and generally applicable because it contains a system of individualized exemptions for favored speakers and because Defendants selectively enforced it only against Plaintiffs' religiously motivated speech. The Knotts engage in sidewalk advocacy because of a sincere religious conviction that they must speak up for the unborn. The Ordinance and its enforcement substantially burden that religious exercise by denying them the modest means of amplification necessary to be heard in this particular forum. At the same time, the City permits favored institutional speakers to amplify far more intrusive sound.

Finally, because the federal claims should have remained, the district court should have retained supplemental jurisdiction over the state-law claims. And because Defendants never requested dismissal with prejudice,

it was an abuse of discretion to deprive Plaintiffs of an opportunity to amend the Complaint.

In sum, the case comes down to a single principle the district court overlooked: the government may not sort speakers into favored and disfavored classes; first through an ordinance that lets specific institutional speakers amplify while silencing individual citizens, like Plaintiffs, then through enforcement that punished Plaintiffs' pro-life religious speech while tolerating comparable noise of others. Each of Plaintiffs' claims—facial, as-applied, equal protection, and free exercise—rests on that same defect, and each was adequately pleaded. The district court erred in dismissing those claims with prejudice, on Plaintiffs' first and only Complaint, without leave to amend. This Court should reverse and remand.

**<u>STANDARD OF REVIEW</u>**

This Court "reviews de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 451 (6th Cir. 2003)). When considering a motion to dismiss, all well-pleaded

14

allegations in the Complaint are treated as true. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). A decision to dismiss with prejudice is reviewed for abuse of discretion. *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 553 (6th Cir. 2011) (citations omitted).

## ARGUMENT

### I.    The District Court Erred by Dismissing the Facial Challenge to Cuyahoga Falls Ordinance § 509.03(a)(6) (Count I).

The district court erred by dismissing Count I, Plaintiffs' facial challenge to the Cuyahoga Falls noise ordinance. The Ordinance is a content-based restriction on core protected speech that fails strict scrutiny. These defects render it facially unconstitutional under the First Amendment. *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 (2009) ("Restrictions on speech based on its content are 'presumptively invalid' and subject to strict scrutiny.") (citation omitted); *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 248 (6th Cir. 2015) (en banc) ("Both content- and viewpoint-based discrimination are subject to strict scrutiny."). Because the Ordinance's plain text impermissibly burdens substantial amounts of protected speech while

15

granting significant exceptions for particular favored speakers to use amplification, the district court's dismissal of Count I should be reversed.

**A.      The Ordinance is Speaker-based on Its Face, Reflecting a Content-based Purpose, and is Therefore Subject to Strict Scrutiny.**

The Ordinance is not a neutral noise regulation that merely limits volume or even location. On its face, the Ordinance exempts only certain kinds of expressive activity when conducted by or under the auspices of favored institutional speakers, making it both content-based and speaker-based under settled First Amendment doctrine.

The Knotts' protests have occurred at all times on a sidewalk, the quintessential traditional public forum. *See Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022). In a traditional public forum, "regulations or laws that are content based . . . are subject to strict scrutiny." *Norton Outdoor Adver., Inc. v. Vill. of St. Bernard*, 99 F.4th 840, 847 (6th Cir. 2024) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Strict scrutiny is a well-established standard under which the government bears the burden of showing that a restriction "furthers a compelling interest and is narrowly

16

tailored to achieve that interest." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (quoting *FEC v. Wisc. Right to Life Inc.*, 551 U.S. 449, 464 (2007)). Some types of speech restrictions are in fact *presumptively* unconstitutional, such as those which are content-based, *Reed*, 576 U.S. at 163, or restrictions which "distinguish[] among different speakers, allowing speech by some but not others." *Citizens United*, 558 U.S. at 340. This applies even to arguably well-intentioned privileges. *Barr v. Am. Ass'n of Pol. Consultants*, 591 U.S. 610, 618–19 (2020).

At issue here is Cuyahoga Falls Ordinance § 509.03(a)(6), which regulates amplified sounds. However, it explicitly exempts particular content and particular speakers from its restriction, to wit: "live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization[.]" *Id.* § 509.03(a)(6)(B)(2).

"Because '[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content,' [the Supreme Court has] insisted that 'laws favoring some speakers over others demand strict

17

scrutiny when the legislature's speaker preference reflects a content preference.'" *Reed*, 576 U.S. at 170 (first quoting *Citizens United*, 558 U.S. at 340; then quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994)). The First Amendment prohibits laws that are "directed at certain content and [] aimed at particular speakers." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

*Barr*, for example, invalidated an exception to the Telephone Consumer Protection Act—the law prohibiting automated telephone calls— if those calls were made to collect debts owed to or guaranteed by the federal government. 591 U.S. at 613. Citing *Reed*, the Supreme Court held that the law discriminates based on content. "Because the law favors speech made for collecting government debt over political and other speech, the law is a content-based restriction on speech." *Id.* at 619. Likewise, *Sorrell* held invalid a Vermont law that disfavored particular speakers, pharmaceutical manufacturers. The law imposed "a speaker- and content-based burden on protected expression, and that circumstance is sufficient to justify application of heightened scrutiny." 564 U.S. at 571. The Supreme Court

18

emphasized that "it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint discriminatory." *Id.*

Just as in *Sorrell* and *Barr*, the Ordinance here discriminates based upon the speaker and, by doing so, draws content-based lines on its face. The operative exemption does not simply allow all amplified sound below a neutral volume threshold, nor does it merely identify a place where sound may occur. It exempts "live outdoor musical or theatrical performances or concerts" when those events are "conducted **under the auspices of** or on property owned by any educational, charitable, governmental or religious organization." Cuyahoga Falls Ord. § 509.03(a)(6)(B)(2) (emphasis added). Thus, whether amplified sound is lawful turns first on what kind of expression is occurring—music, theater, or a concert—and then on who sponsors the speech **or** owns the property for that expression—an educational, charitable, governmental, or religious organization. In other words, the Ordinance forbids a private citizen from using a small megaphone for religious and political advocacy on a public sidewalk yet exempts far louder outdoor performances and concerts whenever a favored

19

educational, charitable, governmental, or religious organization sponsors them or hosts them on its property. The Ordinance thus grants facial preference for certain speakers and certain forms of expression, and under *Sorrell*, *Barr*, *Reed*, and *Citizens United*, that structure is content-based and subject to strict scrutiny.

The phrase "under the auspices of" is especially important. If the exemption applied only to performances on property owned by favored entities, the City could argue that the Ordinance draws only a location-based line. But the Ordinance goes further: it exempts qualifying performances whenever they are conducted **under the auspices of** favored institutional speakers, regardless of where the sound occurs. The exemption therefore follows the sponsor, not the site. An educational organization, charitable organization, religious organization, or the government may place its imprimatur on an event and thereby remove otherwise prohibited amplified sound from the Ordinance's reach. Individual speakers, political advocates, and unaffiliated citizens receive no comparable protection. That is speaker-based discrimination on its face.

20

*Ark. Writer's Proj., Inc. v. Ragland*, 481 U.S. 221 (1987), confirms the point. There, the Supreme Court treated as content-based a tax exemption that favored certain categories of publications, including religious, professional, trade, and sports journals, because application of the exemption required officials to classify the publication by subject matter, describing such a list as "particularly repugnant to First Amendment principles." *Id.* at 229. The same problem exists here. To determine whether the exemption applies, officials must ask what kind of expression is involved—music, theater, or a concert—and whether it is sponsored by or located on property owned by a favored category of organization. That inquiry is neither content-neutral nor speaker-neutral. It requires the City to classify expression and speakers before deciding whether amplification is lawful. It is hard to imagine a more blatant list of "socially acceptable" organizations than the list at issue here: educational, charitable, governmental, or religious organizations. The Ordinance thereby expresses a "content preference" for institutional speakers. Indeed, exemptions frequently transform facially neutral laws into sources of discrimination. *Id.*

21

at 230–31 ("Nor are the requirements of the First Amendment avoided by the fact that Arkansas grants an exemption to other members of the media that might publish discussions of the various subjects contained in Arkansas Times.").

The district court's own hypothetical illustrates the problem rather than solving it: "[f]or example, a religious organization hosting a theatrical performance on its property is exempt from the amplification restrictions whether that performance is pro-life or pro-choice." Opinion, R. 24, Page ID # 243. But viewpoint-neutrality does not make a law content-neutral. A speaker- or event-based exemption triggers strict scrutiny even when it is indifferent to viewpoint, because it still draws lines based on who is speaking and what kind of expression is involved. And the line the Ordinance draws is clear: a favored institution staging a performance or concert "under its auspices" is exempt from the amplification restrictions altogether, while an individual citizen engaged in advocacy on a public sidewalk, like Mr. Knotts, remains fully subject to them. That the favored speakers may be pro-life or pro-choice is beside the point; the City has still

granted institutional speakers an amplification privilege it withholds from individual ones. The First Amendment does not permit that distinction.

The fact that a law applies only to particular types of events is no defense: "just as with speaker-based laws, the fact that a distinction is event based does not render it content neutral." *Reed*, 576 U.S. at 171. To the contrary, "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference," as it does here for institutional speakers. *Turner Broad. Sys.*, 512 U.S. at 658.

Defendants argued below that this is merely a "location" exception. Reply, R. 20, Page ID # 221. But, only one page later, they attempted to minimize this exemption by emphasizing its content-limited scope, noting the exception "only applies to 'live outdoor musical or theatrical performances or concerts[.]'" *Id*. at 222. Neglected entirely is the fact that this exception goes beyond content into speaker identity, and explicitly so. The Ordinance allows those favored speakers to amplify their sound no matter where they are, belying any argument that the exception is limited to location. This is because the Ordinance allows any such performance not

23

only on property owned by a favored organization, but also if performed "under the auspices of" said favored organization. Since the restriction is not actually limited to geography, and those organizations can use amplified sound anywhere in the City, so long as it is conducted under their "auspices," the regulation imposes a speaker-based restriction.

The district court's analysis cannot be reconciled with the Ordinance's text. Although the court characterized the law as regulating only "the amplification of the speaker" and exempting only "certain locations holding specific events," Opinion, R. 24, Page ID # 243, the exemption turns on far more than volume or place. It protects only particular expressive events—"live outdoor musical or theatrical performances or concerts"—when they are sponsored by or held on property owned by favored institutional speakers. Cuyahoga Falls Ord. § 509.03(a)(6)(B)(2). Thus, before enforcing the Ordinance, officials must ask what kind of expression is occurring and who is responsible for it. That is precisely the kind of content- and speaker-based line the First Amendment forbids.

24

In sum, the Ordinance does not merely regulate volume or location; it privileges certain speakers and certain favored events while denying individual citizens the same ability to use amplified sound in a traditional public forum. That speaker-based structure reflects a content preference, triggers strict scrutiny, and cannot be sustained by relabeling the exemption as geographic or event-based. The district court therefore erred in treating the Ordinance as content-neutral and dismissing Plaintiffs' facial challenge at the pleading stage.

Because the Ordinance is subject to strict scrutiny, the burden falls on the City to establish a compelling interest and least restrictive means—a burden the district court never required it to meet, having resolved the claim under the intermediate standard instead. That inquiry should be conducted in the first instance on remand, not resolved by this Court on a record the City had no occasion to develop. *See Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 703–05, 709 (6th Cir. 2020) (holding strict scrutiny governed and remanding for the district court to determine whether the ordinance survived it); *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 459 (6th Cir. 2019)

25

(remanding case to the district court to apply strict scrutiny under RLUIPA). This Court is "a court of review, not of first view." *Vanderkodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 404 (6th Cir. 2020) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)).

## B. Even if Intermediate Scrutiny Were to Apply, Plaintiffs Plausibly Alleged That the Ordinance is Not Narrowly Tailored and Does not Leave Open Ample Alternative Channels.

Even assuming *arguendo* that the Ordinance were content-neutral and subject only to intermediate scrutiny, dismissal was still improper under *Ward v. Rock Against Racism*, 491 U.S. 781 (1989). A valid time, place, or manner restriction must be narrowly tailored so as not to "burden substantially more speech than is necessary to further the government's legitimate interests," *id.* at 799, and must "leave open ample alternative channels for communication of the information," *id.* at 791. These are independent requirements, and a restriction that flunks either one is invalid. Plaintiffs plausibly alleged that the Ordinance flunks both.

***The Ordinance is not narrowly tailored.*** Adopting the conclusion of *Nylen v. City of Grand Rapids*, 475 F. Supp. 3d 744, 754–55 (W.D. Mich. 2019),

26

the district court held that the Ordinance is narrowly tailored and does not burden substantially more speech than necessary. Opinion, R. 24, Page ID # 243–44. But narrow tailoring requires more than the court demanded. The government "must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014). This Court applied that demanding standard in *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400 (6th Cir. 2022), holding that even if a restriction on sidewalk speech near an abortion clinic were content-neutral, the plaintiffs were likely to succeed on their claim that it was not narrowly tailored because the government had not shown that its sweeping means matched the problem it had identified. *Id.* at 403, 409–11. The same mismatch appears here. The Ordinance's own exemptions show that less-restrictive measures exist and that the City has not carried its burden: favored organizations may use amplified sound for performances and concerts "under [their] auspices" anywhere in the City, even though such events are typically far louder and more sustained than a battery-powered megaphone.

27

A regulation that exempts the louder source of the very harm it targets, while burdening the quieter one, does not burden no more speech than necessary; it raises a plausible inference of the opposite. At the pleading stage, that suffices.

*The Ordinance does not leave open ample alternative channels.* An alternative channel is not "ample" if it does not permit the speaker to reach the intended audience with the intended effectiveness. *See City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994). It must be adequate to "allow the speaker to reach its intended audience." *Harrington v. City of Brentwood*, 726 F.3d 861, 865 (6th Cir. 2013). In *Gilleo*, the Supreme Court explained that alternatives must be comparable in price, availability, and communicative effect to be sufficiently "ample."  512 U.S. at 56–57. The district court found this requirement satisfied because Plaintiffs may "continu[e] to preach the same message on the same sidewalk … without use of an amplification device," and because other channels—"posters, newspapers, and leaflets"—remain open. Opinion, R. 24, Page ID # 244 (quoting *Nylen*, 475 F. Supp. 3d at 755). Both conclusions resolve against Plaintiffs a question the court was required

to construe in their favor. The premise that Plaintiffs can convey the same message on the same sidewalk without amplification cannot be reconciled with the Complaint, which alleges that, without amplification, their voices were "easily drowned out by the sound of the traffic on the nearby State Road and the escorts' whistles and kazoos." R. 1, Page ID # 8. And the generic channels the court identified—the internet, posters, newspapers, leaflets— are not adequate substitutes: the Knotts' message is time-sensitive and location-specific, directed at women entering NEOWC at the moment of decision, and channels that cannot reach that audience, in that forum, at that time, differ fundamentally in "communicative effect." *Gilleo*, 512 U.S. at 56– 57. "[W]e presume that speakers, not the government, know best both what they want to say and how to say it." *Kennedy v. Benson*, 119 F.4th 464, 482 (6th Cir. 2024) (quoting *Riley v. Nat'l Fed'n of Blind, Inc.*, 487 U.S. 781, 791 (1988)). Taking the Complaint's allegations as true, continuing to speak without amplification does not, as a matter of law, constitute an ample alternative, and the district court could not conclude otherwise on a motion to dismiss.

Because Plaintiffs plausibly alleged that the Ordinance is not narrowly tailored and forecloses their ability to reach their intended audience in the forum where their speech is most effective, they stated a claim even under intermediate scrutiny.

## II. The District Court Erred in Dismissing the As-Applied Viewpoint Discrimination Claim (Count III).

The district court erred in dismissing Plaintiffs' as-applied viewpoint discrimination claim under Count III. The Verified Complaint contains well-pleaded allegations establishing that Defendants selectively enforced the Ordinance against Plaintiffs because of their pro-life viewpoint, while tolerating comparable or greater noise-making and disruptive conduct by opposing abortion escorts. The Constitution forbids the government from enforcing its laws in a manner that targets disfavored speakers while permitting comparable conduct by others. "In the realm of private speech or expression, government regulation may not favor one speaker over another." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment

30

is all the more blatant." *Id.* at 829. "It is antithetical to a free society for the government to give 'one side of a debatable public question an advantage in expressing its views to the people.'" *Id*. (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 785 (1978)). The district court improperly collapsed this distinct as-applied claim into the facial challenge and failed to address key factual allegations, including Dobney's explicit threat.

### A. The Well-pleaded Allegations Establish That the Ordinance Was Enforced Against Plaintiffs Because of Their Pro-life Viewpoint.

The district court erred in dismissing Count III because the Verified Complaint contains well-pleaded allegations that Defendants selectively enforced the Ordinance against Plaintiffs because of their pro-life viewpoint, while tolerating comparable or greater noise from opposing escorts. Viewpoint discrimination "strikes at the heart of the First Amendment" and is presumptively unconstitutional. *Rosenberger*, 515 U.S. at 829. *See also Matal v. Tam*, 582 U.S. 218, 223 (2017). The Complaint describes two sets of speakers engaged in the same conduct, in the same place, at the same time, under the same ordinance: Plaintiffs used a small megaphone to communicate their

31

pro-life message. Abortion escorts used whistles, kazoos, and other devices to generate comparable—often louder—noise, specifically to drown out Plaintiffs' speech. Yet only one side was punished.

Plaintiffs regularly engage in sidewalk advocacy outside NEOWC to convey their pro-life message directly to patients entering the clinic and to abortion escorts. Complaint, R. 1, Page ID # 2. They chose to use a battery-powered megaphone not for volume alone, but to ensure their religiously motivated message could be heard over background traffic noise on State Road and the deliberate counter-noise (whistles and kazoos) employed by escorts attempting to drown them out. *Id.*, Page ID # 7. Once the megaphone was seized and its use effectively prohibited, Plaintiffs' unamplified voices were rendered largely inaudible to their intended audience. *Id*. at # 8 (megaphone "easily drowned out by the sound of the traffic" and escorts' instruments).

The presence of the abortion escorts is not mere background; it is a central allegation of unequal enforcement. On December 28, 2024, escorts actively used whistles, kazoos, and umbrellas to drown out Plaintiffs' speech

32

while shoving umbrellas in their faces and issuing threats. Complaint, R. 1, Page ID # 2, 7–8. Despite this comparable (and often louder) noise-making in plain view of the police, only Mr. Knotts was cited and arrested. *Id.*, Page ID # 3, 9. A nearby resident complained solely about Plaintiffs' megaphone, not the escorts' instruments. *Id.*, Page ID # 8. Officers Dobney and Paratore responded, relied exclusively on the account of an off-duty officer working as a clinic security guard, and ignored Lindsay Knotts' contemporaneous complaints about the escorts' conduct and threats. *Id.*, Page ID # 8–9. Dobney went further, expressly threatening future arrest of Mr. Knotts for causing "annoyance" even without amplification. *Id.*

These facts, taken as true and construed in Plaintiffs' favor, establish a classic direct case of viewpoint-based selective enforcement. Officers observed both groups. They nevertheless credited only the complaint directed at Plaintiffs, ignored contemporaneous complaints about the escorts, and cited and arrested only Mr. Knotts, despite never witnessing his use of amplification. *See Wayte v. United States*, 470 U.S. 598, 608 (1985) (selective enforcement based on viewpoint violates Equal Protection and the

33

First Amendment). This is despite the Ordinance's explicit inclusion of "horn, drum, piano or other musical or percussion instrument" as regulated sources of amplification. Cuyahoga Falls Ord. § 509.03(a)(6). That differential treatment, standing alone, plausibly alleges unconstitutional selective enforcement. *See Stemler v. City of Florence,* 126 F.3d 856, 874 (6th Cir. 1997).

Additionally, the court stated that this was "not a 'heckler's veto' scenario" because the officers responded to a resident's noise complaint about amplification rather than silencing Plaintiffs to appease a hostile crowd intent on violence. Opinion, R. 24, Page ID # 248–49 (citing *Bible Believers*, 805 F.3d at 234).[2] This analysis misses the mark. Plaintiffs did not allege a *Bible Believers*-style mob confrontation; they alleged that the City permitted abortion escorts to engage in deliberate, sustained counter-noise (whistles, kazoos, and other instruments specifically intended to drown out Plaintiffs' message) while citing and arresting only Mr. Knotts for comparable or lesser amplification of his pro-life viewpoint. Complaint, R.

---

[2] The district court discusses this in the Vagueness section of its opinion, a Count that Plaintiffs do not raise on appeal here.

1, Page ID # 3, 7–9. The City permitted one side's noise to silence the other and then enforced the Ordinance only against the disfavored speaker.[3] That is not "mere response to a complaint"; it is selective enforcement based on viewpoint. The selective toleration of amplification was employed as the very mechanism to suppress Plaintiffs' speech, with police taking no action despite Mrs. Knotts' contemporaneous complaints and despite never witnessing Mr. Knotts use the megaphone. *Id.*, Page ID # 9. By focusing solely on the absence of physical violence, the court failed to address the core theory: that Defendants selectively enforced the law asymmetrically to suppress Plaintiffs' pro-life message.

---

[3] In doing so, the district court also erred in ascribing motivation to the officers and complainant. Opinion, R. 24, Page ID # 249. The officers' and complainant's subjective motivations remain untested at this stage. Sergeant Dobney's own statements—threatening future arrest for causing "annoyance" with or without amplification—demonstrate a desire to disperse Plaintiffs' message rather than simply enforce the Ordinance's amplification restriction. Complaint, R. 1, Page ID # 8–9. These allegations must be accepted as true and construed in Plaintiffs' favor.

## B.    The Complaint Plausibly Alleges Municipal Liability Through Ratification, Custom, and Viewpoint-Based Enforcement.

The district court erred in dismissing Count III because the Verified Complaint contains a particularly powerful, well-pleaded demonstration of viewpoint-based selective enforcement. The district court attempted to reduce the case to a single instance. But an "as-applied constitutional challenge 'consists of a challenge to the statute's application *only to the party before the court*[.]'" *Zillow, Inc. v. Miller*, 126 F.4th 445, 455 (6th Cir. 2025) (quoting *Amelkin v. McClure*, 205 F.3d 293, 296 (6th Cir. 2000) ) (emphasis added). Moreover, the unwritten policy or pattern and practice alleged here involved multiple departments for the City (both the police department and prosecutor's office) who carried out the viewpoint discrimination for a period of many months. *See Hoye v. City of Oakland*, 653 F.3d 835, 854 (9th Cir. 2011) (recognizing the importance of free speech selective enforcement claims lest First Amendment guarantees become "an empty formality").

First, the City's continued prosecution of Mr. Knotts independently supports municipal liability because it plausibly alleges ratification of the unconstitutional enforcement decision. A municipality may be liable under

36

*Monell* not only when an express policy causes the injury, but also when authorized municipal actors approve, adopt, or knowingly continue a subordinate's unconstitutional decision. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). That is what the Complaint alleges here. The City did not promptly correct the officers' viewpoint-discriminatory citation after the facts could be reviewed. It did not dismiss the charge once it was apparent that neither responding officer had witnessed Mr. Knotts use the megaphone, that the megaphone had died before they arrived, that officers ignored Mrs. Knotts's contemporaneous complaints about the escorts' comparable noise and threats, and that Dobney had threatened future arrest for mere "annoyance" with or without amplification.

Moreover, the City's ratification of viewpoint-based enforcement is further evidenced by the coordinated actions of multiple departments over several months. After the December 28, 2024, citation, the case was transferred to Stow Municipal Court (2025 CRB 00069). Complaint, R. 1, Page ID # 9. Mr. Knotts appeared with counsel prepared for trial on May 9, 2025;

37

only on the day of trial did the government dismiss the charges rather than proceed. *Id*. This prolonged prosecutorial pursuit—despite the officers never having witnessed the megaphone in use and despite Mrs. Knotts's contemporaneous complaints about the escorts—confirms that the enforcement decision was driven by hostility to Plaintiffs' pro-life viewpoint, not by any neutral application of the Ordinance. At the pleading stage, that prolonged pursuit permits the reasonable inference that the City reviewed and ratified the original enforcement decision rather than treating it as an isolated mistake by line officers.

That ratification also caused a continuing First Amendment injury. The harm was not limited to the brief roadside detention or the issuance of a citation. By pursuing the charge through the eve of trial, the City confirmed to Plaintiffs that the December 28 enforcement decision represented the operative rule going forward: pro-life sidewalk advocacy using amplification would be punished, while comparable counter-noise by clinic escorts would be ignored. That ongoing prosecution reinforced Dobney's warning that Mr. Knotts could be arrested again for causing "annoyance,"

38

even without amplified sound, and it predictably chilled Plaintiffs' speech. Since the incident, Plaintiffs have continued their advocacy but have refrained from using amplification out of fear of further enforcement. *Id.*, Page ID # 16. The City's ratification therefore supplies both the municipal action and the causal link required by *Monell*: municipal actors knowingly maintained the viewpoint-discriminatory enforcement decision, and that continued enforcement posture chilled Plaintiffs' protected speech.

Second, the Complaint plausibly alleges an unwritten municipal custom or practice of enforcing the Ordinance against pro-life speakers while tolerating comparable or greater noise by abortion-clinic escorts. A plaintiff need not identify a formally written policy to plead municipal liability; a persistent and well-settled practice may constitute municipal policy when it is so widespread that it fairly represents municipal action. *Monell*, 436 U.S. at 690–91. Here, the alleged practice was not a one-off misjudgment. Police had previously witnessed abortion-clinic escorts using noise-amplification devices and playing music without taking enforcement action. Complaint, R. 1, Page ID # 3. On December 7, 2024, an escort

39

threatened the Knotts and another spat on them while police were present and took no action. *Id.*, Page ID # 6–7. On December 28, escorts again used whistles, kazoos, and umbrellas to drown out Plaintiffs' pro-life message, made threats, and physically interfered with them; yet Defendants ignored Mrs. Knotts's complaints and enforced the Ordinance only against Mr. Knotts. *Id.*, Page ID # 7–9. Those allegations describe repeated municipal tolerance of one side's comparable noise and obstruction, paired with enforcement against the opposing viewpoint.

That custom theory is especially plausible because the alleged differential treatment occurred in the same forum, at the same clinic, between speakers addressing the same abortion-related controversy, using comparable sound-producing devices for opposite expressive purposes. The escorts' unreasonable noise was a potential violation of the *identical* Ordinance, yet they were not charged. Plaintiffs used a small battery-powered megaphone to make their pro-life message audible over traffic; the escorts used whistles, kazoos, music, and other noise to drown that message out. Yet only Plaintiffs' speech triggered enforcement. The only material

40

distinction was viewpoint. At the pleading stage, Plaintiffs need not prove the full scope of the City's custom or identify every prior instance of similar conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They need only plead facts permitting a reasonable *Monell* inference that the City's enforcement practice was not neutral. *See Coley v. Lucas Cnty.*, 799 F.3d 530, 542 (6th Cir. 2015). *See also Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (observing that there was "at least some evidence" that the sheriff "implicitly authorized, approved, or knowingly acquiesced," in the actions of his subordinates where he failed to punish their wrongful conduct after repeated violations of the same type). The Complaint does so by alleging repeated non-enforcement against escorts, one-sided crediting of the clinic-security officer's account, disregard of Mrs. Knotts's complaints, months of continued prosecution, and a continuing threat of future arrest. Together, those allegations plausibly state a municipal custom of viewpoint-based enforcement sufficient to survive dismissal.

Third, particularly damning is Dobney's explicit threat to Lindsay Knotts: that Zachary Knotts would be arrested again if he caused

41

"annoyance" in the future, with **or without** amplification. Complaint, R. 1, Page ID # 9. That statement is a direct allegation that the enforcement decision was not based on any objective violation of the Ordinance's amplification restrictions, but rather on disapproval of the content and viewpoint of Plaintiffs' pro-life, religiously motivated speech.

Viewpoint discrimination is "poison." *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1141 (D.C. Cir. 2023) (quoting *Iancu v. Brunetti*, 588 U.S. 388, 399 (2019) (Alito, J., concurring)). It is antithetical to a free society for the government to give "one side of a debatable public question an advantage in expressing its views to the people." *Id*. (quoting *Bellotti*, 435 U.S. at 785). Dobney's threat that Mr. Knotts would be arrested again for causing "annoyance" with or without amplification is direct evidence that the City has done exactly that.

Indeed, Dobney's directive transforms the incident from a routine noise citation into a clear case of viewpoint discrimination. By threatening future arrest for the mere causing of "annoyance" (a standard the Ordinance itself applies only to particular sources of amplification likely to disturb

42

persons of ordinary sensibilities), Dobney revealed that the Police Department's true criterion was hostility to Plaintiffs' message, not the volume or manner of their speech. Such content- and viewpoint-based enforcement is presumptively unconstitutional. *Rosenberger*, 515 U.S. at 829; *Matal*, 582 U.S. at 223.

Dobney, a supervising sergeant who responded to the scene and directed the citation and arrest, at minimum, demonstrated a custom of tolerating viewpoint-based enforcement. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Dobney's supervisory role and express threat at minimum demonstrate the City's operative enforcement practice and support municipal liability through custom, ratification, and delegated enforcement authority.

The escorts' conduct, patently comparable and intended to drown out Plaintiffs' speech, only further highlights how only the Knotts were targeted. Taken together and construed in Plaintiffs' favor at the pleading stage, these facts plausibly allege that the Ordinance was enforced against them because of their pro-life viewpoint. *Wayte*, 470 U.S. at 608 ("although prosecutorial

discretion is broad, it is not 'unfettered. Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints.'"); *Stemler*, 126 F.3d at 874.

The absence of any discussion or analysis, or even mention, of Dobney's statement from the district court's memorandum opinion is conspicuous. The implicit resolution of this factual assertion is a significant and meaningful error, demanding correction.

Nor can the City defeat *Monell* liability by reciting the label "single incident." That argument abstracts away nearly every fact that makes this case plausibly municipal. Plaintiffs do not allege only that one officer issued one mistaken citation on one afternoon. They allege prior police awareness of escorts' noise-amplification and music without enforcement; prior police inaction when escorts threatened and spat on the Knotts; a December 28 enforcement decision made by responding officers who ignored comparable ongoing violations by the escorts; a supervising sergeant's express future-arrest threat untethered from amplification; the City's months-long prosecution of the citation after the facts were reviewable; and continuing

44

chilled speech caused by the City's enforcement posture. Complaint, R. 1, Page ID # 3, 6–9, 16. Calling that sequence a "single incident" does not make it so.

At minimum, those allegations support reasonable inferences of a municipal custom of viewpoint-based non-enforcement for clinic escorts, ratification through continued prosecution, and an operative enforcement rule announced by Dobney that Plaintiffs could be arrested for causing "annoyance" even without violating the Ordinance's amplification terms. Rule 12 does not require Plaintiffs to prove the City's internal policymaking chain before discovery; it requires only facts making municipal responsibility plausible. These allegations easily clear that threshold.

### C. The District Court Erred in Dismissing the Individual-Capacity Claims Against Dobney and Paratore.

#### 1. *The Complaint Specifically Alleges Each Officer's Personal Involvement in the Violation.*

The district court erred in dismissing the individual-capacity claims against Officers Bradford Dobney and Dylan Paratore. The Verified Complaint contains specific, well-pleaded factual allegations demonstrating that both officers personally participated in the viewpoint-discriminatory

45

enforcement of the Ordinance against Zachary Knotts. *See Nieves v. Bartlett*, 587 U.S. 391 (2019) (probable cause does not categorically bar First Amendment retaliatory arrest claims involving viewpoint discrimination); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (officers who jointly participate in an indivisible constitutional violation are subject to individual § 1983 liability). The Complaint alleges that **both** officers responded to the scene on December 28, 2024. Complaint, R. 1, Page ID # 8. Dobney, acting in a supervisory role, directed the response, consulted only the clinic's off-duty security guard (Officer Oldham), questioned no other witnesses, and participated in detaining Mr. Knotts. *Id.*, Page ID # 8–9. Most significantly, after the arrest, Dobney expressly threatened Lindsay Knotts that Zachary Knotts "would be arrested again if he caused annoyance again, with or without amplified sound." *Id*. This statement is a direct allegation that the enforcement was driven by disapproval of the content and viewpoint of Plaintiffs' pro-life religious message rather than any objective violation of the Ordinance's amplification restrictions.

46

Paratore actively participated by signing the citation, relying solely on the clinic guard's account while disregarding the escorts' comparable (and often louder) use of whistles and kazoos to drown out Plaintiffs' speech. *Id.*, Page ID # 3, 9. Neither officer personally witnessed Mr. Knotts using the megaphone, as it had already run out of batteries before they arrived. *Id.*, Page ID # 8–9. When Mrs. Knotts attempted to report the escorts' threats and noise violations, the officers dismissed her complaints, stating the threats were "not a crime." *Id*.

The officers' actions were not generic or undifferentiated, as the Complaint specifically attributes supervisory direction, the decisive threat revealing motive, and the issuance of the citation to each officer's conduct. The district court's conclusion that Plaintiffs "reference 'Defendants' without distinguishing who committed what actions," Opinion, R. 24, Page ID # 238–239, is simply incorrect when the Complaint is read as a whole and in Plaintiffs' favor. The district court's dismissal of the individual-capacity claims against Dobney and Paratore should be reversed.

47

### 2.    *Any Qualified Immunity Basis for Dismissal Was Error.*

As an alternative basis for dismissing the individual-capacity claims, the district court appears to have relied on qualified immunity. Although the court never explicitly names the defense, its reasoning tracks qualified immunity doctrine. It held that the Ordinance is not so "grossly and flagrantly unconstitutional" that a reasonable officer would have seen its flaws. Opinion, R. 24, Page ID # 239 (quoting *Billiards & Brews, LLC v. City of Knoxville*, No. 3:23-CV-181, 2024 U.S. Dist. LEXIS 163606, at *19–21 (E.D. Tenn. Sept. 11, 2024) (in turn quoting *Freed v. Thomas*, 81 F.4th 655, 660 (6th Cir. 2023), and *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979))). However the ruling is characterized, it cannot support dismissal. First, Defendants never raised qualified immunity. Qualified immunity "is an affirmative defense that must be pleaded by a defendant official," *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982), yet it appears nowhere in Defendants' motion to dismiss or their reply. R. 16; R. 20. To the extent the court invoked it on its own, it did so without notice and without affording Plaintiffs any opportunity to address the "grossly and flagrantly unconstitutional" exception or the

48

officers' motive. Resolving an unraised affirmative defense against Plaintiffs, the non-moving parties, and dismissing the individual Defendants on that basis was error.

Second, even if qualified immunity were properly before the court, it answers the wrong question. Plaintiffs' viewpoint-discrimination claim does not depend on the Ordinance being invalid; it assumes, *arguendo*, the opposite. The claim is that the officers enforced the Ordinance against Mr. Knotts because of his pro-life viewpoint, while ignoring comparable noise by the escorts. Nothing in *Freed* or *DeFillippo* immunizes that. An officer may rely on a valid statute; he may not wield it as an instrument of viewpoint discrimination. The law is clearly established that "the government may not engage in a more invidious kind of content discrimination known as 'viewpoint discrimination.'" *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021) (citations omitted).

Third, qualified immunity rarely can be resolved on a Rule 12(b)(6) motion, because it turns on the same facts the court must construe in the plaintiff's favor—here, the officers' motive. *Wesley v. Campbell*, 779 F.3d 421,

433–34 (6th Cir. 2015) ("it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity"). The Complaint pleads that motive directly: Dobney warned that Mr. Knotts would be arrested again for causing "annoyance" with or without amplification. Complaint, R. 1, Page ID # 9. Taken as true, that allegation shows enforcement driven by hostility to Plaintiffs' message, not any neutral feature of their conduct. To the extent the district court dismissed liability against the individual officers based on qualified immunity, it was erroneous.

### III.   The District Court Mischaracterized Plaintiffs' Equal Protection Claim (Count V).

The district court committed reversible error by treating Count V, Plaintiffs' Equal Protection claim, as merely duplicative of Plaintiffs' First Amendment claims. It is not. Count V asserts an **independent Equal Protection violation** based on **selective enforcement**. The opinion below states: "The only substantive rights asserted in Count V are within the scope of the First Amendment—the rights to free speech and free exercise of religion. This claim is therefore duplicative of Plaintiffs' First Amendment

50

claims." Opinion, R. 24, Page ID # 253–254. That analysis fundamentally misreads both the Complaint and Plaintiffs' briefing.

The Equal Protection Clause prohibits the government from treating similarly situated individuals differently without a rational basis—and it applies with full force when differential treatment tracks protected activity or expressive viewpoint. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000) (a "class-of-one" can have an equal protection claim); *Stemler*, 126 F.3d at 874 (selective enforcement of facially neutral laws based on viewpoint or protected activity states an Equal Protection claim).

Count V pleaded a straightforward selective enforcement Equal Protection claim under the Fourteenth Amendment. Plaintiffs alleged that Defendants "have engaged in discrimination based on religious viewpoint, enforcing their unwritten interpretation of Cuyahoga Falls law uniquely against religious speakers" and that Mr. Knotts "has been arrested and is likely to be subject to future enforcement on the basis of his viewpoint." Complaint, R. 1, Page ID # 18. They further alleged that, compared to the pro-abortion escorts engaging in comparable noise-making, Plaintiffs "have

51

been and will continue to be selectively mistreated," with the discriminatory enforcement motivated by the intent "to punish or inhibit the exercise of Plaintiffs' First Amendment rights." *Id.*, Page ID # 18–19. This is a classic selective enforcement theory, not a repackaged substantive due process claim. Plaintiffs have sufficiently alleged the existence of this policy through circumstantial evidence. *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 527–28 (6th Cir. 2023) (noting that the most common approach to demonstrating intentional discrimination is through circumstantial evidence) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977)). The district court never even addressed this precedent.

The only material difference between Plaintiffs and the abortion escorts on December 28, 2024, was the content and viewpoint of their speech; both groups were engaged in comparable amplified sound-making at the same time and location. The officers' decision to credit only the complaint against the pro-life speakers, to ignore Mrs. Knotts's complaints about the assaults and threats she received from escorts, and to pursue prosecution for months supplies the requisite circumstantial evidence of discriminatory

52

purpose. *See Vill. of Arlington Heights*, 429 U.S. at 264–66 (noting that an administrative body is rarely "motivated by a single concern" but that unconstitutional discrimination is "not just a competing consideration," and that when there is proof that a discriminatory purpose was at least "a motivating factor in the [governmental] decision" then the decision should not receive judicial deference normally afforded government officials). This claim is not redundant of the First Amendment counts. While the First Amendment prohibits viewpoint-based restrictions on speech, the Equal Protection Clause independently prohibits the government's unequal treatment of similarly situated speakers. Plaintiffs allege both—and are entitled to proceed on both theories.

The court's error is particularly glaring with respect to Plaintiff Lindsay Knotts. While Zachary was cited and arrested, Lindsay actively complained to the officers about the escorts' threats, umbrella-shoving, and noise-making intended to drown out their speech. *Id.*, Page ID # 7–9. The officers dismissed her complaints outright, telling her the threats were "not a crime," while simultaneously acting on the single complaint about

Plaintiffs' message. *Id.* This disparate treatment of two similarly situated complainants at the same location—the only notable difference being viewpoint—epitomizes the unequal protection Plaintiffs pleaded. The district court never addressed Lindsay's role or this clear example of viewpoint-based selective enforcement.

Because the court failed to analyze Count V under the correct Equal Protection framework and instead improperly treated it as redundant, the dismissal should be reversed and the claim remanded for further proceedings.

## IV.   Plaintiffs Have Adequately Pleaded a Free Exercise Claim (Count IV).

The district court erred in dismissing Plaintiffs' free exercise claim, Count IV, at the Rule 12(b)(6) stage. The court concluded that the Cuyahoga Falls noise ordinance is neutral and generally applicable and imposes no substantial burden on Plaintiffs' sincerely held religious beliefs. Opinion, R. 24, Page ID # 250–52. This ruling was erroneous both legally and factually.

Laws that burden religious exercise are presumptively unconstitutional unless they are both neutral and generally applicable.

54

*Meriwether v. Hartop*, 992 F.3d 492, 512 (6th Cir. 2021). Because the Ordinance creates a system of individualized exemptions for favored speakers and because Defendants selectively enforced it only against Plaintiffs' religiously motivated speech, it is neither neutral nor generally applicable. It is therefore subject to strict scrutiny, which it cannot survive. *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021); *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). A law lacks general applicability "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," or if it creates a system of individualized exemptions. *Fulton*, 593 U.S. at 534–35. The court's analysis failed on both fronts.

First, the Ordinance is not generally applicable. It contains **categorical exemptions for favored speakers**, such as religious, governmental, educational, and charitable organizations, while denying the same ability to individual speakers like Plaintiffs. Cuyahoga Falls Ord. § 509.03(a)(6)(B)(2). These speaker-based carve-outs favor certain corporate religious and institutional speakers while burdening individual citizens like the Knotts

who seek to engage in religiously motivated speech. An exemption regime that allows secular or institutional conduct undermining the government's asserted interests triggers strict scrutiny. *See Fulton*, 593 U.S. at 535–36; *Roman Catholic Diocese v. Cuomo*, 592 U.S. 14 (2020).

Second, the City's selective enforcement against Plaintiffs' pro-life religious speech while tolerating comparable noise from opposing escorts further demonstrates a lack of general applicability and reveals viewpoint/religious animus. The escorts used whistles, kazoos, and other instruments specifically to drown out the Knotts' message yet faced no enforcement. Complaint, R. 1, Page ID # 2–3, 7–9. This is despite the Ordinance's explicit inclusion of "horn, drum, piano or other musical or percussion instrument" as regulated sources of amplification. Cuyahoga Falls Ord. § 509.03(a)(6). Dobney's threat to arrest Mr. Knotts for causing "annoyance" even without amplification, *id.*, Page ID # 9, is a direct allegation that enforcement turned on hostility to Plaintiffs' religious viewpoint rather than any neutral application of the noise rule.

Finally, the Ordinance imposes a substantial burden on Plaintiffs' sincerely held religious beliefs. The Knotts hold a religious conviction to engage in sidewalk advocacy to save the lives of the unborn, and they credibly allege that a modest battery-powered megaphone is necessary to make their message audible over traffic and the escorts' counter-noise. Complaint, R. 1, Page ID # 2, 7–8. Prohibiting this means of effective communication in the precise location and to the precise audience their faith compels them to reach substantially burdens their religious exercise. *See Kennedy*, 597 U.S. at 525 (substantial burden exists where government restricts religious expression in a traditional public forum). The "validity" of the Knotts' religious belief is an inquiry "foreclosed to Government." *United States v. Seeger*, 380 U.S. 163, 184 (1965). As to the "sincerity" of that belief, "[i]t is, of course, a question of fact," *id*. at 185, which must at this stage be assumed true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 589 (2007). The district court erred in considering the burden insubstantial or non-central. Opinion, R. 24, Page ID # 251. To the contrary, the Complaint alleges a far greater burden: a substantial chill on Plaintiffs' future religious speech and

57

advocacy, an explicit threat of repeated arrest even without amplification, and targeted enforcement against their religiously motivated pro-life message. Complaint, R. 1, Page ID # 9, 16. Such allegations must be accepted as true at the pleading stage.

Because the Ordinance is neither neutral nor generally applicable and substantially burdens Plaintiffs' religious exercise, it is subject to strict scrutiny—which it cannot survive. The dismissal of Count IV should be reversed and the claim remanded for further proceedings.

## V.    Supplemental Jurisdiction over Plaintiffs' State Claims, Counts VI through VIII.

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. Subsection (a) of this provision provides that when a federal district court has original jurisdiction, it "shall" have supplemental jurisdiction over "all other claims" which "form part of the same case or controversy." However, subsection (c)(3) of this provision allows for a district court to decline this jurisdiction when all claims over which it had original jurisdiction have been dismissed. This happened below. *See* Opinion, R. 24, Page ID # 254.

58

Because the district court erroneously dismissed the federal constitutional claims here, as explained *supra*, it improperly dismissed the state law claims arising from the same case or controversy. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (noting that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."); *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705 (6th Cir. 2012) (holding that a district court errs when dismissing state law claims under 28 U.S.C. § 1367(c)(3) when the underlying dismissal of federal claims was erroneous).

## VI. The District Court Abused Its Discretion in Dismissing Plaintiffs' Federal Claims with Prejudice.

Even if the Complaint is found to be deficient on any of the appealed counts, Plaintiffs should have been given leave to amend to cure any deficiencies. "[W]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (internal

59

citations and quotation marks omitted). Plaintiffs were afforded no chance to do so here.

In *Newberry v. Silverman*, this Court dealt with a Motion to Dismiss and an Opposition thereto where neither party specified if the dismissal requested was with or without prejudice. 789 F.3d 636, 643–44 (6th Cir. 2015).[4] Upon appeal, this Court stated that "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Id.* at 646. This Court has also found that a district court's dismissal with prejudice raises serious due process concerns, as aggrieved parties do not get a meaningful opportunity to respond. In *Mich. Surgery Inv., LLC v. Arman*, this Court considered a district court's conversion of a plaintiff's motion for voluntary dismissal *without* prejudice into one *with* prejudice. 627 F.3d 572, 575 (6th Cir.

---

[4] *See* Order and Judgment, R. 28, *Newberry v. Silverman*, 1:14-cv-00313 (S.D. Ohio Apr. 24, 2014). *See also* Defendant's Motion to Dismiss for Failure to State a Claim, *id.* at R. 22; Plaintiff's Response, *id.* at R. 23; and Defendant's Reply, *id.* at R. 24. None of these discussed whether the dismissal request was with or without prejudice.

2010). This Court found that by so doing, the district court had deprived the plaintiffs of "such notice and an opportunity to withdraw the motion." *Id*.

The same applies here. Defendants did not request a dismissal with prejudice, and so Plaintiffs did not respond to any such argument. Motion to Dismiss, R. 16; Opposition, R. 18; Reply, R. 20. Despite this, the Court dismissed the federal claims with prejudice without mentioning a single factor in support of that decision. Opinion, R. 24; Order, R. 25. In any event, there is *no* indication in the record that Defendants would be prejudiced by amendment of the Complaint. The Supreme Court has ruled that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (discussing Fed. R. Civ. P. 15(a)). The factors that should preclude this leave include: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id*. None of these factors apply here. In fact, it should be

61

62

stressed that Plaintiffs have yet to have a *single* opportunity to amend the Complaint. Given this, the Court's decision to dismiss the federal counts with prejudice was an abuse of discretion and should be reversed.

* * *

62

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the district court and remand for further proceedings, or at minimum vacate the dismissal with prejudice and remand with instructions to permit Plaintiffs leave to amend the Complaint.

Respectfully submitted,

Geoffrey R. Surtees
**AMERICAN CENTER**
   **FOR LAW & JUSTICE**
P.O. Box 60
New Hope, KY 40052
Tel: (502) 827-0951

Stuart J. Roth
Andrew J. Ekonomou
Christina A. Compagnone
Nathan J. Moelker
/s/ Liam R. Harrell
Liam R. Harrell
**AMERICAN CENTER**
   **FOR LAW & JUSTICE**
201 Maryland Ave. NE
Washington, DC 20002
Tel: (202) 546-8890
Email: lharrell@aclj.org
*Counsel for Plaintiffs-Appellants*

63

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b), this document contains 11,239 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Palatino Linotype.

Dated: June 22, 2026

/s/ Liam R. Harrell
Liam R. Harrell
*Counsel for Plaintiffs-Appellants*

64

# CERTIFICATE OF SERVICE

I certify that on June 22, 2026, this document was electronically filed with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit and served on all parties or their counsel of record through the CM/ECF system.

Dated: June 22, 2026                    /s/ Liam R. Harrell
                                        Liam R. Harrell
                                        *Counsel for Plaintiffs-Appellants*

65

# DESIGNATION OF COURT DOCUMENTS

*Zachary Knotts & Lindsay Knotts v. City of Cuyahoga Falls, et al.*
No. 5:25-cv-01120

| Record Entry No. | Description | Page ID # |
|---|---|---|
| 1 | Verified Complaint | 1–24 |
| 1-1 | Exhibit A – Motions Hearing Transcript | 25–82 |
| 1-2 | Exhibit B – Final Sentencing Order | 83–84 |
| 3 | Motion for Preliminary Injunction | 101–116 |
| 3-1 | Affidavit of Lindsay Knotts | 117–120 |
| 3-2 | Video Exhibits | 121 |
| 12 | Opposition to Motion for Preliminary Injunction | 137 |
| 15 | Reply in favor of Motion for Preliminary Injunction | 159–164 |
| 16 | Partial Motion to Dismiss Complaint | 165–167 |
| 16-1 | Brief in Support of Motion to Dismiss Complaint | 168–192 |
| 18 | Opposition to Motion to Dismiss Complaint | 194–219 |
| 20 | Reply in Support of Motion to Dismiss Complaint | 221–229 |
| 24 | Opinion and Order granting Motion to Dismiss Complaint | 235–254 |
| 25 | Judgment Entry | 255 |
| 26 | Notice of Appeal | 256–257 |

# ADDENDUM

**Page**

Cuyahoga Falls Ordinance § 509.03 .......................................................... Add. 1

## 509.03 DISORDERLY CONDUCT.

(a)   No person shall recklessly cause inconvenience, annoyance or alarm to another, by doing any of the following:

(1)   Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;

(2)   Making unreasonable noise or offensively coarse utterance, gesture or display, or communicating unwarranted and grossly abusive language to any person, which by its very utterance or usage inflicts injury or tends to incite an immediate breach of the peace;

(3)   Insulting, taunting or challenging another, under circumstances in which such conduct is likely to provoke a violent response;

(4)   Hindering or preventing the movement of persons on a public street, road, highway or right of way, or to, from, within or upon public or private property, so as to interfere with the rights of others, and by any act which serves no lawful and reasonable purpose of the offender;

(5)   Creating a condition which is physically offensive to persons or which presents a risk of physical harm to persons or property, by any act which serves no lawful and reasonable purpose of the offender;

(6)   Generating or, being the owner or person in possession or control of a vehicle or premises by reason of employment, agency, or otherwise, permitting to be generated unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities by means of a radio, phonograph, television, tape player, loudspeaker or any other sound amplifying device or by any horn, drum, piano or other musical or percussion instrument.

A.   It is prima facie unlawful for a person to generate or permit to be generated sound by the above described devices or instruments in the following circumstances:

1.   On public and private property between the hours of 9:00 p.m. and 8:00 a.m. of the following day in a predominantly residential area where the sound is audible more than 80 feet from the property line of the property on which the source of the sound is located;

Add. 1

2.   While operating a motor vehicle playing or allowing to be played any radio, music player or audio system at a volume which is plainly audible to persons other than the occupants of said vehicle or if the sound is audible to any person outside the limits of the roadway upon which the vehicle is operating or located; or, if the vehicle is not operating or located upon a roadway, either the sound is audible to any person not on the property upon which the vehicle is located or operating, or the sound is audible to any person more than 30 feet from the vehicle.

B.   The following are exempted from the prohibitions of this section:

1.   Warning and alarm devices which have the purpose of signaling unsafe or dangerous situations or calling for police used for such purposes.

2.   Shows and exhibitions for which a permit has been obtained pursuant to Chapter 753, parades for which a permit has been obtained pursuant to Section 311.02 of the Traffic Code, and live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization or live outdoor musical or theatrical performances or concerts conducted at any outdoor entertainment facility where such use is legal under the Zoning Code.

(b)   No person, while voluntarily intoxicated shall do either of the following:

(1)   In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance or alarm to persons of ordinary sensibilities, which conduct the offender, if he were not intoxicated, should know is likely to have such effect on others;

(2)   Engage in conduct or create a condition which presents a risk of physical harm to himself or another, or to the property of another.

(c)   Violation of any statute or ordinance of which an element is operating a motor vehicle, locomotive, watercraft, aircraft or other vehicle while under the influence of alcohol or any drug of abuse, is not a violation of subsection (b) hereof.

Add. 2

(d)   If a person appears to an ordinary observer to be intoxicated, it is probable cause to believe that person is voluntarily intoxicated for purposes of subsection (b) hereof.

(e) (1) Whoever violates this section is guilty of disorderly conduct.

(2)   Except as otherwise provided in subsections (e)(3) and (e)(4), disorderly conduct is a minor misdemeanor.

(3)   Disorderly conduct is a misdemeanor of the fourth degree if any of the following applies:

A.   The offender persists in disorderly conduct after reasonable warning or request to desist.

B.   The offense is committed in the vicinity of a school or in a school safety zone.

C.   The offense is committed in the presence of any law enforcement officer, firefighter, rescuer, medical person, emergency medical services person, or other authorized person who is engaged in the person's duties at the scene of a fire, accident, disaster, riot or emergency of any kind.

D.   The offense is committed in the presence of any emergency facility person who is engaged in the person's duties in an emergency facility.

(4)   If an offender previously has been convicted of or pleaded guilty to three or more violations of subsection (b) of this section, a violation of subsection (b) of this section is a misdemeanor of the fourth degree.

(f)   As used in this section:

(1)   "Emergency medical services person" is the singular of "emergency medical services personnel" as defined in Ohio R.C. 2133.21.

(2)   "Emergency facility person" is the singular of "emergency facility personnel" as defined in Ohio R.C. 2909.04.

(3)   "Emergency facility" has the same meaning as in Ohio R.C. 2909.04.

(4)   "Committed in the vicinity of a school" has the same meaning as in Ohio R.C. 2925.01. (ORC 2917.11)

Add. 3