**No. 26-3395**

# In the United States Court of Appeals for the Sixth Circuit

Zachary Knotts and Lindsay Knotts,
*Plaintiffs-Appellants*

v.

The City of Cuyahoga Falls; Dylan Paratore, in his individual and official capacities; and Bradford Dobney, in his individual and official capacities, *Defendants-Appellees*,

---

On Appeal from the United States District Court for the Northern District of Ohio, Case No. 5:25-cv-01120 (Adams, J.)

---

### BRIEF OF DEFENDANTS-APPELLEES

---

Paul J. Schumacher, Esquire
Dickie, McCamey & Chilcote, P.C.
600 Superior Avenue East
Fifth Third Center, Suite 2330
Cleveland, Ohio 44114
(216) 685-1827
pschumacher@dmclaw.com

Maria V. Hanley, Esquire
Dickie, McCamey & Chilcote, P.C.
444 Liberty Avenue, Suite 1000
Pittsburgh, Pennsylvania 15222
(412) 281-7272
mhanley@dmclaw.com

*Counsel for Defendants-Appellees*

## CORPORATE DISCLOSURE AND FINANCIAL INTEREST

The City of Cuyahoga Falls, Ohio is a political subdivision and is therefore not required under Fed. R. App. P. 26.1 and 6th Cir. R. 26.1(a) to provide a corporate disclosure or disclose financial interests.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE AND FINANCIAL INTEREST ............................. i

Table of Authorities .................................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ...................................... x

STATEMENT OF JURISDICTION ............................................................ xi

STATEMENT OF ISSUES ........................................................................ xii

STATEMENT OF THE CASE .................................................................... 1

STANDARD OF REVIEW .......................................................................... 9

SUMMARY OF ARGUMENT ..................................................................... 9

ARGUMENT ............................................................................................... 11

A.    The District Court Correctly Dismissed The Knotts' Facial First Amendment Challenge Because The Ordinance Regulates Unreasonable Amplified Noise, Not Speech Content. .................................. 11

    1.    The Ordinance is a content neutral restriction, and its exemptions do not trigger strict scrutiny. ............................................ 13

    2.    The Ordinance satisfies intermediate scrutiny and leaves open ample alternative channels. .............................................. 16

B.    The District Court Correctly Dismissed The Knotts' As-Applied Viewpoint-Discrimination Claim Because The Complaint Pleads Enforcement Based On A Noise Complaint, Not Viewpoint. ........................ 22

    1.    The Complaint and its attached exhibits show that officers responded to a complaint about a man with a megaphone. ................ 22

    2.    The Knotts do not plausibly allege similarly situated comparators or viewpoint-based motive. .............................................. 24

C.    The Individual-Capacity Claims Against Officer Paratore And Sergeant Dobney Were Properly Dismissed. ........................................... 27

    1.    The Complaint does not plead defendant-specific facts showing a constitutional violation. .................................................. 28

    2.    The officers did not violate clearly established law by enforcing a facially valid ordinance. .............................................. 30

D.    The Knotts Failed To Plead Municipal Liability Under *Monell*. .................. 32

      1.     The Knotts' ratification theory fails because the municipal dismissal does not establish policymaker approval of unconstitutional conduct. ....................................................32

      2.     The Knotts failed to plead an underlying constitutional violation or municipal policy, custom, or practice............................34

**E.**    The Free Exercise And Equal Protection Claims Were Properly Dismissed.....................................................................................38

      1.     The Free Exercise claim fails because the Ordinance is neutral, generally applicable, and imposes at most an incidental burden. .......38

      2.     The Equal Protection claim fails because the Knotts do not plausibly allege similarly situated comparators or intentional discrimination. ...................................................................42

**F.**    The District Court Properly Declined Supplemental Jurisdiction Over The State-Law Claims. ................................................................43

**G.**    The District Court Did Not Abuse Its Discretion In Dismissing The Federal Claims With Prejudice.....................................................45

      1.     The Knotts never properly moved for leave to amend or submitted a proposed amended complaint. .........................................45

      2.     Amendment would be futile because the Knotts' theories fail as a matter of law. .......................................................................47

CONCLUSION .........................................................................................48

CERTIFICATE OF COMPLIANCE......................................................49

CERTIFICATE OF SERVICE ...............................................................50

ADDENDUM ............................................................................................51

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
727 F.3d 502 (6th Cir. 2013) ..................................................................43

*Allman v. Walmart, Inc.*,
967 F.3d 566, 568 (6th Cir. 2020) ...........................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................... 8, 19, 21, 23, 26, 32, 33, 36, 38, 43

*Axson-Flynn v. Johnson*,
356 F.3d 1277 (10th Cir. 2004) ...............................................................41

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008) ...................................................................37

*Bd. of Cnty. Comm'rs v. Brown*,
520 U.S. 397 (1997) ...........................................................................32, 37

*Begala v. PNC Bank, Ohio, N.A.*,
214 F.3d 776 (6th Cir. 2000) ...................................................................45

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................8, 19, 21, 32, 33, 38

*Bible Believers v. Wayne County*,
805 F.3d 228 (6th Cir. 2015) ...................................................................23

*Birth Control Centers, Inc. v. Reizen*,
743 F.2d 352 (6th Cir. 1984) ...................................................................42

*Burgess v. Fischer*,
735 F.3d 462 (6th Cir. 2013) .............................................................32, 33, 34

*CBC Cos. v. Equifax, Inc.*,
561 F.3d 569, 571 (6th Cir. 2009) ...........................................................8

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ................................................................40, 41

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
  596 U.S. 61 (2022) .........................................................................13

*City of Ladue v. Gilleo*,
  512 U.S. 43 (1994) ....................................................................20, 21

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) .......................................................................33

*Civil Liberties for Urban Believers v. City of Chicago*,
  342 F.3d 752 (7th Cir. 2003) .....................................................39, 40

*Clark v. Cmty. for Creative Non-Violence*,
  468 U.S. 288 (1984) ...................................................................12, 18

*Courtright v. City of Battle Creek*,
  839 F.3d 513, 518 (6th Cir. 2016) ...................................................8

*Doe v. Claiborne Cnty.*,
  103 F.3d 495 (6th Cir. 1996) .........................................................34

*Emp't Div. v. Smith*,
  494 U.S. 872 (1990) .......................................................................41

*Felton v. City of Cleveland*,
  988 F.2d 649 (6th Cir. 1993) .....................................................33, 34

*Fox v. DeSoto*,
  489 F.3d 227 (6th Cir. 2007) .........................................................37

*Freed v. Thomas*,
  81 F.4th 655 (6th Cir. 2023) ..........................................................31

*Frisby v. Schultz*,
  487 U.S. 474 (1988) .......................................................................17

*Fulton v. City of Philadelphia*,
  593 U.S. 522 (2021) ...................................................................40, 41

*Gamel v. City of Cincinnati*,
625 F.3d 949 (6th Cir. 2010) ...................................................................8, 44

*Gaughan v. City of Cleveland*,
212 F. App'x 405 (6th Cir. 2007) ...............................................................12, 26

*Harrington v. City of Brentwood*,
726 F.3d 861 (6th Cir. 2013) .............................................................16, 19, 20

*Henderson v. McMurray*,
987 F.3d 997 (11th Cir. 2021) .......................................................................24

*Heyne v. Metro. Nashville Pub. Schs.*,
655 F.3d 556, 562-63 (6th Cir. 2011) ............................................................8

*Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*,
954 F.3d 925 (6th Cir. 2020) .......................................................................28

*Kentucky ex rel. Danville Christian Academy, Inc. v. Beshear*,
981 F.3d 505 (6th Cir. 2020) .......................................................................38

*Kuyat v. BioMimetic Therapeutics, Inc.*,
747 F.3d 435 (6th Cir. 2014) .......................................................................46

*La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*,
622 F.3d 471 (6th Cir. 2010) .......................................................................48

*Lexington H-L Servs. v. Lexington-Fayette Urban Cnty. Gov't*,
879 F.3d 224 (6th Cir. 2018) .......................................................................18

*Living Water Church of God v. Charter Twp. of Meridian*,
258 F. App'x 729 (6th Cir. 2007) ..................................................................39

*Long v. Insight Communications of Cent. Ohio, LLC*,
804 F.3d 791 (6th Cir. 2015) .......................................................................31

*McCullen v. Coakley*,
573 U.S. 464 (2014) ....................................................................................19

*Michigan v. DeFillippo*,
443 U.S. 31 (1979) ......................................................................................31

vi

*Miller v. Calhoun County*,
    408 F.3d 803 (6th Cir. 2005) ...............................................47

*Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*,
    984 F.3d 477 (6th Cir. 2020) ...............................................41

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ............................................. 5, 8, 10, 28, 32, 33, 34, 36, 37

*Musson Theatrical, Inc. v. Fed. Express Corp.*,
    89 F.3d 1244 (6th Cir. 1996) ...............................................44

*Nieves v. Bartlett*,
    587 U.S. 391 (2019) ...............................................42

*Nylen v. City of Grand Rapids*,
    475 F. Supp. 3d 744 (W.D. Mich. 2019) ...............................................17

*Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs.
    LLC*,
    700 F.3d 829 (6th Cir. 2012) ...............................................48

*Okla. City v. Tuttle*,
    471 U.S. 808 (1985) ...............................................36, 37

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ...............................................36

*Phelps-Roper v. Strickland*,
    539 F.3d 356 (6th Cir. 2008) ...............................................20

*Pineda v. Hamilton Cnty.*,
    977 F.3d 483 (6th Cir. 2020) ...............................................34

*PR Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir. 2004) ...............................................46

*Prime Media, Inc. v. City of Brentwood*,
    398 F.3d 814 (6th Cir. 2005) ...............................................11

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ...............................................13

*Reform Am. v. City of Detroit*,
  37 F.4th 1138 (6th Cir. 2022) ................................................................12, 16, 20

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*,
601 F.3d 505, 512 (6th Cir. 2010) .........................................................................X

*Roberts v. Neace*,
  958 F.3d 409 (6th Cir. 2020) ................................................................................38

*Rondigo, L.L.C. v. Twp. of Richmond*,
  641 F.3d 673 (6th Cir. 2011) ...............................................................................42

*Rudd v. City of Norton Shores*,
  977 F.3d 503 (6th Cir. 2020) ...............................................................................28

*Sinay v. Lamson & Sessions Co.*,
  948 F.2d 1037 (6th Cir. 1991) .............................................................................46

*Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*,
  56 F.4th 400 (6th Cir. 2022) ................................................................................19

*State v. Dorso*,
  446 N.E.2d 449 (Ohio 1983) ................................................................................26

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
  552 F.3d 430 (6th Cir. 2008) ...............................................................................46

*United States v. Grace*,
  461 U.S. 171 (1983) ..............................................................................................12

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) ..............................................................................................42

*Vision Church v. Vill. of Long Grove*,
  468 F.3d 975 (7th Cir. 2006) ...........................................................................39, 40

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) .......................................................... 12, 16, 17, 18, 19, 26

*Wayte v. United States*,
  470 U.S. 598 (1985) ..............................................................................................42

*Williams v. CitiMortgage, Inc.*,
   498 F. App'x 532 (6th Cir. 2012) ........................................................37

## Statutes

28 U.S.C. § 1291 ...............................................................................xi

28 U.S.C. § 1367(a) ..........................................................................xi

28 U.S.C. § 1367(c)(3) ..................................................................8, 43

42 U.S.C. § 1983 ...........................................................................xi, 4

OHIO REV. CODE § 715.49 ................................................................17

## Other Authorities

Fed. R. Civ. P. 12 .................................................................21, 37, 38

Fed. R. Civ. P. 12(b)(6)......................................... xii, 6, 7, 8, 9, 45

CODIFIED ORDINANCES OF THE CITY OF CUYAHOGA FALLS, OHIO
   § 509.03(a) ................................................................................26, 30

CODIFIED ORDINANCES OF THE CITY OF CUYAHOGA FALLS, OHIO
   § 509.03(a)(6) ................................................. 1, 2, 13, 15, 18, 25, 40

CODIFIED ORDINANCES OF THE CITY OF CUYAHOGA FALLS, OHIO
   § 509.03(a)(6)(B) .........................................................................14

U.S. Const. amend. I ..........................................................................11

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees do not believe oral argument is necessary because the appeal can be resolved on the pleadings, the documents attached to the Complaint, and settled precedent governing content-neutral time, place, and manner restrictions, individual-capacity liability, municipal liability, and leave to amend.  The district court correctly dismissed the federal claims because the Complaint alleges enforcement of a facially valid noise ordinance in response to a resident complaint about amplified sound, not suppression of Plaintiffs-Appellants' viewpoint or religious message.  Defendants-Appellees therefore respectfully submit that the case is appropriate for decision on the briefs, though counsel is prepared to address any questions the Court may have if argument is scheduled.

x

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Appellants asserted federal constitutional claims under 42 U.S.C. § 1983, and supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367(a).  This Court has jurisdiction under 28 U.S.C. § 1291.  The district court entered final judgment on March 31, 2026, dismissing Counts I through V with prejudice and Counts VI through VIII without prejudice after declining supplemental jurisdiction.  Appellants timely filed their Notice of Appeal on April 29, 2026.  The judgment disposed of all claims and is final.

**STATEMENT OF ISSUES**

1.      Whether the district court correctly dismissed the Knotts' constitutional claims because the Complaint failed to plausibly allege that Appellees enforced a content-neutral noise ordinance based on the Knotts' viewpoint, religion, or message.

2.      Whether the district court correctly dismissed the individual-capacity claims against Sergeant Dobney and Officer Paratore where the Complaint failed to plead defendant-specific facts showing that either officer violated clearly established constitutional law.

3.      Whether the district court properly applied the Federal Rule of Civil Procedure 12(b)(6) standard by crediting well-pleaded factual allegations while declining to accept conclusory allegations, legal conclusions, and speculative inferences of viewpoint discrimination.

4.      Whether the district court acted within its discretion in dismissing the Knotts' federal claims with prejudice where they never properly moved for leave to amend, never submitted a proposed amended complaint, and never identified curative allegations.

## STATEMENT OF THE CASE

This appeal arises from the City of Cuyahoga Falls' enforcement of a generally applicable noise ordinance—namely, City of Cuyahoga Falls Ordinance § 509.03(a)(6) (the "Ordinance")—after police received a complaint from a nearby resident regarding excessive noise outside Northeast Ohio Women's Center, a clinic in the City of Cuyahoga Falls.  The Ordinance states, in pertinent part:

> 509.03 DISORDERLY CONDUCT.
>
> (a) No person shall recklessly cause inconvenience, annoyance or alarm to another, by doing any of the following:
>
> .   .   .
>
> (6) Generating or, being the owner or person in possession or control of a vehicle or premises by reason of employment, agency, or otherwise, permitting to be generated unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities by means of a radio, phonograph, television, tape player, loudspeaker or any other sound amplifying device or by any horn, drum, piano or other musical or percussion instrument.
>
> .   .   .
>
> B. The following are exempted from the prohibitions of this section:
>
> 1. Warning and alarm devices which have the purpose of signaling unsafe or dangerous situations or calling for police used for such purposes.
>
> 2. Shows and exhibitions for which a permit has been obtained pursuant to Chapter 753, parades for which a permit has been obtained pursuant to Section 311.02 of the Traffic Code, and live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization or live outdoor

1

> musical or theatrical performances or concerts conducted
> at any outdoor entertainment facility where such use is
> legal under the Zoning Code.

CODIFIED ORDINANCES OF THE CITY OF CUYAHOGA FALLS, OHIO § 509.03(a)(6) (quoted in Opinion, R. 24, PageID #236).

In their Complaint, Appellants Zachary and Lindsay Knotts allege that, based on their religious beliefs, they regularly engage in sidewalk advocacy opposing abortion at the clinic. (Complaint, R. 1, PageID #2, 6-7.) As part of these activities, on December 28, 2024 the Knotts were protesting outside of the clinic, as they had on previous occasions. (Complaint, R. 1, PageID #2, 7-8.) On December 28, they brought a battery-powered megaphone to amplify their speech, which Mr. Knotts used. (Complaint, R. 1, PageID #2, 7-8.)

The Complaint further alleges that on that day, clinic escorts, *i.e.*, volunteers who assist women from their vehicles into the clinic, used umbrellas to shield patients' faces and used kazoos and whistles to "drown out the Knotts' speech." (Complaint, R. 1, PageID #2, 7-8.) According to the Complaint's allegations, the megaphone was easily drowned out by nearby traffic and the escorts' whistles and kazoos. (Complaint, R. 1, PageID #8.) Sergeant Bradford Dobney and Officer Dylan Paratore responded to the scene after a nearby resident called to complain about "a man with a megaphone making noise at the women's clinic" and that the caller was annoyed by the noise. (Complaint, R. 1, PageID #8-9; Hearing Transcript,

2

R. 1-1, PageID #47-48.)  Officer Paratore issued a citation to Mr. Knotts, and Mr. Knotts was charged with violating the Ordinance.  (Complaint, R. 1, PageID #9; Hearing Transcript, R. 1-1, PageID #59.)

When Sergeant Dobney and Officer Paratore arrived, Mr. Knotts was no longer using the megaphone, and it was down by his side.  (Complaint, R. 1, PageID #8-9; Hearing Transcript, R. 1-1, PageID #65.)  Sergeant Dobney did not personally hear Mr. Knotts use the megaphone, and he did not know what was said through it, but the words spoken did not factor into enforcement.  (Hearing Transcript, R. 1-1, PageID #65-67.)  The Complaint alleges that Sergeant Dobney told Mrs. Knotts that Mr. Knotts could be arrested in the future if he caused annoyance, with or without amplified sound.  (Complaint, R. 1, PageID #9.)  Mrs. Knotts allegedly attempted to report threats and disruptive conduct by escorts at the scene, but the police officers did not cite them.  (Complaint, R. 1, PageID #7-9.)  Sergeant Dobney acknowledged Mrs. Knotts' complaints about the escorts making noise and threatening comments, but he concluded the threat report did not rise to menacing and that her other complaints did not warrant more than observation.  (Hearing Transcript, R. 1-1, PageID #53-55, 68-71.)

Before the incident, Mr. Knotts allegedly contacted the Cuyahoga Falls Police Department to ask whether the use of amplified sound would be an issue while engaging in sidewalk advocacy.  (Complaint, R. 1, PageID #6.)  The Knotts allege

3

that, based on the wording of the Ordinance and the response they received, they believed amplified sound would not be an issue if used modestly. (Complaint, R. 1, PageID #6.) Those allegations do not change the nature of the City's later enforcement, which occurred only after police received a resident complaint about the use of a megaphone near the facility. (Complaint, R. 1, PageID #8; Opinion, R. 24, PageID #235-236, 249.)

The charge against Mr. Knotts was transferred Cuyahoga Falls Mayor's Court to Stow Municipal Court as Case No. 2025CRB00069. (Complaint, R. 1, PageID #9.) Mr. Knotts pleaded not guilty, appeared for trial, and the municipal case was dismissed, without prejudice, on May 9, 2025. (Complaint, R. 1, PageID #9; Sentencing Order, R. 1-2, PageID #84.)[1]

On May 30, 2025, the Knotts filed their Verified Complaint, which included two attached exhibits—a transcript from the hearing in Stow Municipal Court on February 3, 2025 pertaining to the charge against Mr. Knotts and the resultant Sentencing Order. (Complaint, R. 1, PageID #1-24; Hearing Transcript, R. 1-1, PageID #25-82; Sentencing Order, R. 1-2, PageID #83-84.) The Complaint asserts federal constitutional claims under 42 U.S.C. § 1983 and related state-law claims against the City of Cuyahoga Falls, Officer Paratore, and Sergeant Dobney.

---

[1]     Exhibit B attached to the Knotts' Complaint is a Sentencing Order issued by Stow Municipal Court on May 9, 2025 pertaining to the charge against Mr. Knotts, *City of Cuyahoga Falls v. Zachary Knotts*, 2025CRB00069 ("Sentencing Order").

4

(Complaint, R. 1, PageID #1-24.)  The Knotts allege facial and as-applied First Amendment violations, Free Exercise, Equal Protection, municipal or *Monell* liability, and individual-capacity claims against Sergeant Dobney and Officer Paratore.  (Complaint, R. 1, PageID #10-19.)  The Knotts also assert Ohio constitutional claims and a replevin claim concerning the seized megaphone. (Complaint, R. 1, PageID #19-21.)

The Complaint does not allege that the City, Sergeant Dobney, or Officer Paratore prohibited them from remaining on the sidewalk or from continuing advocacy.  (*See generally* Complaint, R. 1, PageID #1-24.)  Instead, the Knotts' federal claims focus on the Ordinance's regulation of amplified sound and the December 28 citation.  (*See generally* Complaint, R. 1, PageID #1-24.)  The Complaint also does not plead measured sound levels, duration, distance, audibility from residences, or facts showing that the escorts' alleged conduct violated the Ordinance in materially identical circumstances.  (*See generally* Complaint, R. 1, PageID #1-24.)  It does not plead any facts showing that any final municipal policymaker reviewed alleged constitutional defects and approved them, that the prosecutor acted as a final policymaker for the City, or that the City adopted a policy of suppressing the Knotts' viewpoint.  (*See generally* Complaint, R. 1, PageID #1-24.)  Nor does the Sentencing Order identify any constitutional defect in the

5

Ordinance or state that the charge was dismissed because enforcement was improper. (*See generally* Sentencing Order, R. 1-2, PageID #84.)

On June 3, 2025, the Knotts moved for a preliminary injunction seeking to block enforcement of the Ordinance and to prohibit what they characterized as unequal enforcement. (Motion for Preliminary Injunction, R. 3, PageID #101-116.) The City, Sergeant Dobney, and Officer Paratore opposed the Knotts' Motion for Preliminary Injunction on June 20, 2025. (Opposition to Motion for Preliminary Injunction, R. 12, PageID #137-152.)

On July 7, 2025, the City, Sergeant Dobney, and Officer Paratore filed a Partial Motion to Dismiss the Knotts' Complaint under Federal Rule of Civil Procedure 12(b)(6). (Motion to Dismiss, R. 16, PageID #165-167; Memorandum in Support of Motion to Dismiss, R. 16-1, PageID #168-192.) On March 11, 2026, the district court stayed the Knotts' Motion for Preliminary Injunction pending resolution of Defendants' Partial Motion to Dismiss. (Order Staying Motion for Preliminary Injunction, R. 23, PageID #234.)

On March 31, 2026, the district court granted the Partial Motion to Dismiss. (Opinion, R. 24, PageID #235-254.) The district court dismissed the individual-capacity claims against Officer Paratore and Sergeant Dobney, rejected the Knotts' facial and as-applied First Amendment theories, dismissed the Free Exercise and Equal Protection claims, and concluded that the Knotts had not plausibly alleged

municipal liability.  (Opinion, R. 24, PageID #238-254.)  As a result, the district court dismissed the Knotts federal claims (Counts I through V) with prejudice and declined supplemental jurisdiction over the remaining state-law claims (Counts VI through VIII), dismissing the latter claims without prejudice.  (Opinion, R. 24, PageID #235, 254.)   The district court entered final judgment the same day. (Judgment Entry, R. 25, PageID #255.)

The district court's ruling rested on a straightforward distinction between the Knotts' protected message and the method of amplification regulated by the Ordinance.  (*See generally* Opinion, R. 24, PageID #235-254.)  The district court reasoned that the Ordinance regulates amplification and noise rather than content or viewpoint, the Knotts continued to engage in sidewalk advocacy at the clinic without amplification, and the content of their speech had not been restricted or regulated. (Opinion, R. 24, PageID #243, 247, 249.)  On appeal, the Knotts seek to recast the case as suppression of religious and pro-life speech.  The facts pleaded in the Complaint show a narrower dispute—officers responded to a resident noise complaint and enforced a facially valid noise Ordinance.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). In conducting that review, the Court accepts well-pleaded factual allegations as true and construes the complaint in the light most favorable to

the plaintiff. *CBC Cos. v. Equifax, Inc.*, 561 F.3d 569, 571 (6th Cir. 2009); *Allman v. Walmart, Inc.*, 967 F.3d 566, 568 (6th Cir. 2020). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading that offers only labels, conclusions, or a formulaic recitation of the elements of a cause of action does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the district court dismissed Plaintiff's First Amendment, Free Exercise, Equal Protection, *Monell*, and individual-capacity claims under Rule 12(b)(6), review of those rulings is de novo. See *Allman*, 967 F.3d at 568; Iqbal, 556 U.S. at 678.

The Court likewise reviews de novo the dismissal of municipal-liability claims under *Monell* and claims against individual defendants where qualified immunity is raised at the pleading stage. See *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 562-63 (6th Cir. 2011); *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). A district court's decision to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) is reviewed for abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010).

The denial of leave to amend is generally reviewed for abuse of discretion, although a determination that amendment would be futile is reviewed de novo because futility is assessed under the same standard applicable to a motion to dismiss

8

under Rule 12(b)(6). *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

## SUMMARY OF ARGUMENT

The district court correctly dismissed the Knotts' federal claims because the Complaint and its attached exhibits show enforcement of a content-neutral noise ordinance in response to a resident complaint about amplified sound, not suppression of religious or pro-life speech. The Ordinance regulates unreasonable noise generated through sound-amplifying devices and similar instruments. It does not turn on the speaker's message, viewpoint, religion, or subject matter. The Ordinance therefore operates as a content-neutral time, place, and manner restriction that serves the City's significant interest in controlling nuisance noise and preserving public order while leaving the Knotts free to continue their sidewalk advocacy through unamplified speech, signs, literature, prayer, conversation, and counseling.

The Knotts' as-applied theory fares no better. Their own pleading shows that officers responded after a nearby resident complained about "a man with a megaphone making noise" near the clinic and that the caller was annoyed by the noise. Sergeant Dobney did not know what words were spoken through the megaphone and that the words spoken did not factor into enforcement. Those facts defeat any plausible inference that Officer Paratore or Sergeant Dobney cited Mr. Knotts because of viewpoint. Nor do the Knotts plausibly allege similarly situated

9

comparators.  They do not plead facts showing that clinic escorts or any exempted event generated materially similar unreasonable amplified noise, produced a comparable resident complaint, or were intentionally treated differently because of viewpoint.

The individual-capacity claims against Officer Paratore and Sergeant Dobney were also properly dismissed.  Section 1983 requires defendant-specific facts showing that each officer, through his own conduct, violated the Constitution.  The Complaint instead relies largely on collective allegations and ordinary enforcement activity following a resident noise complaint.  In any event, no clearly established law required reasonable officers to disregard a facially valid noise ordinance or to conclude that issuing a citation under that ordinance in response to a citizen complaint violated the First Amendment, the Free Exercise Clause, or the Equal Protection Clause.

The Knotts likewise failed to plead municipal liability under *Monell*.  The Complaint does not plausibly allege an underlying constitutional violation, a municipal policy or custom, a final policymaker decision, or deliberate ratification of unconstitutional conduct.  The later dismissal of the municipal charge does not establish that the original citation was unconstitutional, much less that a City policymaker approved viewpoint discrimination.  The Knotts' Free Exercise and Equal Protection claims fail for similar reasons: the Ordinance is neutral and

generally applicable, imposes at most an incidental burden on religiously motivated conduct, and was not plausibly enforced against the Knotts on the basis of religion, viewpoint, or intentional discrimination.

Finally, the district court acted within its discretion in declining supplemental jurisdiction over the remaining state-law claims after dismissing all federal claims, and it did not abuse its discretion by dismissing the federal claims with prejudice. The Knotts never properly moved for leave to amend, never submitted a proposed amended complaint, and never identified curative allegations. Amendment would be futile because their theories fail as a matter of law. The judgment should therefore be affirmed.

## ARGUMENT

**A.** **The District Court Correctly Dismissed The Knotts' Facial First Amendment Challenge Because The Ordinance Regulates Unreasonable Amplified Noise, Not Speech Content.**

Judge Adams correctly determined that the Ordinance is constitutional on its face. (Opinion, R. 24, PageID #244.) The First Amendment to the United States Constitution prohibits the government from making any law abridging the freedom of speech. U.S. Const. amend. I. The First Amendment, however, "does not guarantee the right to communicate one's views at all times and places or in any manner." *Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 818 (6th Cir. 2005). The Supreme Court has held that "people who wish to propagandize protests or

11

views" do not have a constitutional right to do so "whenever and however and wherever they please." *Gaughan v. City of Cleveland*, 212 F. App'x 405, 416 (6th Cir. 2007) (citing *United States v. Grace*, 461 U.S. 171, 177-78 (1983)). Although traditional public forum property, such as a sidewalk, occupies a special position in terms of First Amendment protection, and the government may not prohibit all communicative activity on such property, Supreme Court precedent:

> make[s] clear, however, that even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). Further, as the district court recognized, "[t]here is no First Amendment right to amplified sound per se. . . ." (Opinion, R. 24, PageID #250 (quoting *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1159 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 448 (2022))). Under that framework, the Knotts' facial challenge fails because the Ordinance is a content neutral restriction that satisfies intermediate scrutiny. This Court should affirm the district court's rejection of the Knotts' facial challenge.

12

### 1.    The Ordinance is a content neutral restriction, and its exemptions do not trigger strict scrutiny.

Appellants rely on *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), to argue that § 509.03(a)(6) is content based because it contains exemptions for certain organized events. But *Reed* applies when a law targets speech based on "the topic discussed or the idea or message expressed." *Id.* at 163. The ordinance here does neither. Its operative prohibition applies to any person who recklessly generates unreasonable noise or loud sound likely to inconvenience or annoy persons of ordinary sensibilities by means of a loudspeaker, sound-amplifying device, or musical or percussion instrument. Cuyahoga Falls Codified Ordinances § 509.03(a)(6); Opinion, R.24, PageID #236. The prohibition turns on sound, volume, reasonableness, and the use of sound-producing devices, not whether the speaker is pro-life or pro-choice, religious or secular, political or apolitical. Opinion, R.24, PageID #243-44.

Nor does *Reed* require strict scrutiny merely because an official must identify the context in which speech occurs. In *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022), the Supreme Court rejected that expansive reading of *Reed* and held that a regulation is not content based simply because officials must examine contextual features to determine whether the rule applies. The relevant question remains whether the law targets speech because of the topic discussed or the idea or message expressed. *Id.* at 69. Here, applying the ordinance

13

requires no assessment of the abortion debate, religious doctrine, political ideology, or any other message. It requires only determining whether a person generated unreasonable amplified sound and whether a limited event-based exemption applies.

Appellants' contrary argument depends on isolating the words "under the auspices of" from the event categories they modify. The ordinance does not exempt all amplified speech by educational, charitable, governmental, or religious organizations. A religious organization conducting ordinary sidewalk advocacy through a megaphone is not categorically exempt. A charitable organization engaging in amplified advocacy is not categorically exempt. The exemption applies only to specified organized-event categories: permitted shows and exhibitions, permitted parades, live outdoor musical or theatrical performances, concerts, and lawful outdoor entertainment-facility uses. Cuyahoga Falls Codified Ordinances § 509.03(a)(6)(B); Opinion, R.24, PageID #236, 243. The organizational language is part of that event-based limitation. It is not a license for favored institutions to amplify any message anywhere in the City.

That distinction defeats appellants' speaker-based theory. The exemption does not ask whether a message is religious, secular, pro-life, pro-choice, political, or apolitical. A qualifying concert or theatrical performance is treated the same regardless of viewpoint. A nonqualifying amplified sidewalk protest is treated the same regardless of viewpoint. As the district court recognized, a religious

14

organization hosting a theatrical performance would be exempt whether the performance was pro-life or pro-choice. Opinion, R.24, PageID #243. The trigger is the regulated sound and the organized-event context, not the idea expressed.

Appellants' reliance on speaker-discrimination cases is misplaced. Unlike laws at issue in those decisions, § 509.03(a)(6) does not favor particular messages, viewpoints, or subjects of discussion. It regulates unreasonable amplified noise and contains limited event-based exemptions that apply without regard to the content of any message.[2] This ordinance does not favor religious messages, charitable messages, governmental messages, educational messages, or any side of any public debate. It regulates unreasonable amplified noise and excludes limited organized-event contexts that are differently situated from ad hoc amplified sound on public sidewalks. Appellants' opening brief presses the opposite theory, but that theory rests on treating the exemption as if it applies to institutional speakers generally, rather than to specific organized events.

---

[2] Appellants principally rely on cases involving distinctions tied to communicative content or speaker preferences reflecting content preferences. See *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 622-24 (2020) (content-based exception to robocall ban); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564-66 (2011) (speaker- and content-based restrictions on pharmaceutical marketing speech); *Citizens United v. FEC*, 558 U.S. 310, 340-41 (2010) (speaker-based restrictions on political speech); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 229-31 (1987) (tax scheme distinguishing publications by subject matter). Unlike those laws, the ordinance here does not require officials to evaluate any topic, viewpoint, or idea expressed by the speaker.

15

Because the ordinance is justified by the City's content-neutral interest in controlling nuisance noise and preserving public order, intermediate scrutiny applies. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). *Ward* confirms that government may impose reasonable time, place, and manner restrictions on protected speech in public forums when the restrictions are justified without reference to speech content, narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels. *Id.* at 791. It also confirms that the government need not choose the least restrictive means. *Id.* at 798-99. The Sixth Circuit has likewise recognized that "[t]here is no First Amendment right to amplified sound per se." *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1159 (6th Cir. 2022. The district court therefore correctly declined to apply strict scrutiny and properly held that the ordinance is content neutral. Opinion, R.24, PageID #242-44.

**2.    The Ordinance satisfies intermediate scrutiny and leaves open ample alternative channels.**

Because the Ordinance is a content neutral time, place, and manner regulation, it is subject to intermediate scrutiny.  Such a regulation is valid if it serves a significant government interest, is narrowly tailored to that interest, and leaves open adequate alternative channels of communication for the information.  *Harrington v. City of Brentwood*, 726 F.3d 861, 864 (6th Cir. 2013); *Ward*, 491 U.S. at 791.  The Ordinance satisfies these requirements.

16

The City has significant interests in regulating unreasonable amplified noise, protecting nearby residents from unwelcome sound, preserving public order, and preventing disturbances in public spaces. *See Ward*, 491 U.S. at 796; *Frisby v. Schultz*, 487 U.S. 474, 484-85 (1988). The district court properly recognized the City's "significant government interest of controlling nuisance noise" and relied on authority confirming that government may protect even traditional public forums from excessive noise. (Opinion, R. 24, PageID #243-244 (quoting *Nylen v. City of Grand Rapids*, 475 F. Supp. 3d 744, 754-755 (W.D. Mich. 2019))); *see also* OHIO REV. CODE § 715.49 ("Any municipal corporation may prevent riot, gambling, noise and disturbance, and indecent and disorderly conduct or assemblages, preserve the peace and good order, and protect the property of the municipal corporation and its inhabitants.").

Here, the Ordinance serves a significant government interest in the preservation of peace by regulating unwelcome noise. The Knotts' own allegations confirm that police became involved only after a nearby resident complained about a man using a megaphone near the clinic. (Complaint, R. 1, PageID #8.) The Hearing Transcript attached to the Knotts' Complaint reinforces that point: Sergeant Dobney testified that the dispatched call reported "a man with a megaphone making noise at the women's clinic," and the call notes described "a male with a megaphone making noise at the corner there near the women's clinic and that the caller was

17

annoyed by that and wanted it checked out." (Hearing Transcript, R. 1-1, PageID #47-48.)

The Ordinance is narrowly tailored because it does not prohibit speech, protest, prayer, signs, literature, sidewalk counseling, or presence on the same public sidewalk. Narrow tailoring does not require a regulation to be the least restrictive or least intrusive means of serving the government's interest. *Ward*, 491 U.S. at 798-99; *Clark*, 468 U.S. at 293. A regulation does not violate the First Amendment "simply because there is some imaginable alternative that might be less burdensome on speech." *Lexington H-L Servs. v. Lexington-Fayette Urban Cnty. Gov't*, 879 F.3d 224, 229 (6th Cir. 2018) (quoting *Ward*, 491 U.S. at 797). The Ordinance regulates only unreasonable noise or loud sound generated by specified sound-amplifying devices or instruments and likely to inconvenience or annoy persons of ordinary sensibilities. *See* § 509.03(a)(6). In that respect, it targets the noncommunicative effect of amplified volume, not the Knotts' message. *See Ward*, 491 U.S. at 791-92, 799.

The Ordinance's exemptions are also narrowly tailored. The Knotts argue that exempted institutional events might be louder or more sustained than a battery-powered megaphone. Their assertion is unsupported by the Complaint. The Knotts do not plead any actual exempt event, its volume, duration, location, proximity to residences, or any instance in which the City tolerated louder exempt sound while

18

enforcing against them.  Their "quieter megaphone versus louder concerts" theory rests on a hypothetical, not a well-pleaded fact.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).

Further, the Knotts' reliance on *McCullen v. Coakley*, 573 U.S. 464 (2014), and *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400 (6th Cir. 2022), is misplaced.  Those cases involved restrictions that physically burdened access to close-range sidewalk counseling near abortion facilities.  *McCullen* addressed a fixed buffer zone that pushed speakers away from clinic entrances and impeded close, personal conversations.  573 U.S. at 487-90.  *Sisters for Life* likewise concerned a buffer-zone-type restriction near abortion facilities.  56 F.4th at 402-03. This case is different.  Cuyahoga Falls did not create an exclusion zone, did not bar the Knotts from standing where they wished, and did not prohibit face-to-face advocacy.  The alleged burden here is only the inability to use a megaphone in a manner that generated a resident noise complaint.  This case is more closely analogous to *Ward* and *Harrington* than to the buffer-zone cases the Knotts invoke. *Ward*, 491 U.S. at 791, 798-99; *Harrington*, 726 F.3d at 865-66.

The Ordinance also leaves open ample alternative channels.  The government may impose reasonable regulations upon protected speech so long as it leaves open alternative channels of communication.  *Ward*, 491 U.S. at 791.  While the Knotts may prefer to use a megaphone to make their advocacy more audible over traffic or

19

counter-speech, the First Amendment does not entitle a speaker to use amplification free from reasonable noise regulation. *See Harrington*, 726 F.3d at 866; *Reform Am.*, 37 F.4th at 1159. The Knotts' allegation that amplification made their message more effective does not establish that alternatives were constitutionally inadequate. Ample alternative channels do not require the government to preserve a speaker's preferred or most effective method of communication; they require reasonable means to communicate the message. *Harrington*, 726 F.3d at 865-66; *Phelps-Roper v. Strickland*, 539 F.3d 356, 372 (6th Cir. 2008).

Here, the Knotts remained free to advocate in the same public forum through unamplified speech, signs, literature, prayer, conversation, and sidewalk counseling. The First Amendment does not require the City to guarantee that the Knotts' message will overcome traffic, counter-speech, or environmental noise through amplified sound. *See Reform Am.*, 37 F.4th at 1159; *Harrington*, 726 F.3d at 866. The Knotts do not allege that Defendants excluded them from the sidewalk, prevented them from approaching willing listeners, barred face-to-face advocacy, or prohibited signs, literature, prayer, conversation, or unamplified speech. Their claims focus on amplified sound and the December 28 citation. (*See generally* Complaint, R. 1, PageID #1-24; Opinion, R. 24, PageID #249.) Ultimately, nothing in the Ordinance prohibits the Knotts from expressing their pro-life viewpoints.

The Knotts' reliance on *City of Ladue v. Gilleo*, 512 U.S. 43 (1994), does not

20

change that conclusion. There, the Supreme Court addressed a near-total prohibition on residential signs, a uniquely important medium of expression at one's own home. *Id.* at 54-57. This Ordinance is different. It does not eliminate a unique medium of expression from a uniquely important location. It regulates only ***unreasonable*** amplified noise. The Knotts can still use the same sidewalk, speak directly, hold signs, distribute literature, pray, and counsel. Unlike the ordinance in *Gilleo*, this Ordinance does not remove an entire category of speech from the forum.

Finally, the pleading posture does not save the Knotts' claim. Federal Rule of Civil Procedure 12 does not require courts to accept legal conclusions that intermediate scrutiny cannot be satisfied. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57. The Complaint and its attached exhibits show the key facts: a resident noise complaint about a man with a megaphone, a content-neutral Ordinance regulating unreasonable sound, and the Knotts' continued ability to advocate without amplification. Those facts support dismissal.

Because the Ordinance regulates sound rather than content, serves significant governmental interests, and leaves open ample channels of communication, the district court correctly dismissed the Knotts' facial First Amendment challenge. (Opinion, R. 24, PageID #240-44.)

**B.     The District Court Correctly Dismissed The Knotts' As-Applied Viewpoint-Discrimination Claim Because The Complaint Pleads Enforcement Based On A Noise Complaint, Not Viewpoint.**

**1.     The Complaint and its attached exhibits show that officers responded to a complaint about a man with a megaphone.**

The district court correctly dismissed the Knotts' as-applied viewpoint-discrimination claim because the Complaint and its attached exhibits show that the December 28 enforcement arose from a resident noise complaint about amplified sound—not disagreement with the Knotts' pro-life or religious viewpoint.  The dispatched call reported "a man with a megaphone making noise at the women's clinic," and the call notes described "a male with a megaphone making noise" near the clinic and that the caller was "annoyed by that."  (Hearing Transcript, R. 1-1, PageID #47-48.)  That description tracks the Ordinance's focus on unreasonable noise and annoyance to persons of ordinary sensibilities.  It does not suggest that officers were asked to assess, approve, or disapprove the Knotts' message.

The Knotts emphasize that officers did not personally hear Mr. Knotts use the megaphone to establish viewpoint discrimination.  However, the Hearing Transcript attached to the Complaint shows that officers responded to a dispatched noise complaint, identified the person with the megaphone, consulted Officer Oldham, and reviewed a recording before enforcement occurred.  (Hearing Transcript, R. 1-1, PageID #51-52, 63-65.)  Most importantly, Sergeant Dobney testified that he had "no idea" what words were spoken through the megaphone and that the words

22

spoken did not factor into enforcement. (Hearing Transcript, R. 1-1, PageID #65-67, 72-74.) Those allegations and testimony defeat any plausible inference that officers cited Mr. Knotts because of viewpoint.

A plaintiff may challenge a facially neutral time, place, and manner restriction as applied if it is enforced in a viewpoint-specific manner, but the Complaint must still allege facts making that inference plausible, not merely possible. *See Iqbal*, 556 U.S. at 678-82. Based on the Knotts' allegation that the "megaphone was easily drowned out by the sound of the traffic on the nearby State Road and the escorts' whistles and kazoos[,]" the neighbor's complaint could not have been based on the content of the speech, but rather the amplification. (Complaint, R. 1, PageID #8; Opinion, R. 24, PageID #249.) Here, the well-pleaded facts and Hearing Transcript point to an enforcement response to a resident complaint about amplified sound, not a content- or viewpoint-based decision.

The district court also correctly rejected the Knotts' effort to characterize the incident as a heckler's veto. A heckler's veto involves police silencing a speaker to appease a hostile crowd or prevent violence. *Bible Believers v. Wayne County*, 805 F.3d 228, 234 (6th Cir. 2015) (en banc). Officers did not silence the Knotts to appease clinic escorts, rather, they responded to a neighbor's complaint about amplification. (Opinion, R. 24, PageID #248-249.) Nor does the presence of counter-speakers convert noise enforcement into viewpoint discrimination. *See,*

23

*e.g.*, *Henderson v. McMurray*, 987 F.3d 997, 1004 (11th Cir. 2021) ("The [pro-life advocates] argue that viewpoint discrimination is evident from the fact that abortion-rights advocates can make loud noise (with their voices and cowbells) while the [pro-life advocates] are prevented from doing so (with amplification). But their apples-to-oranges comparison fails. . . . Even as alleged by the [pro-life advocates], the two sides are subject to the same rules regarding amplified and unamplified sound.") Counter-speech and counter-noise may provide context, but they do not establish unconstitutional enforcement unless the Knotts plausibly plead materially similar violations and intentional viewpoint-based differential treatment. As explained below, they did not.

**2.  The Knotts do not plausibly allege similarly situated comparators or viewpoint-based motive.**

The Knotts' selective-enforcement theory also fails because the Complaint does not plausibly allege that clinic escorts committed the same violations. The Knotts allege that escorts used umbrellas, whistles, and kazoos to interfere with or drown out their speech. (Complaint, R. 1, PageID #7-8.) The Complaint does not plead measured sound levels, duration, distance, audibility from nearby residences, resident complaints about the escorts, or other facts showing that escorts generated unreasonable noise likely to inconvenience or annoy persons of ordinary sensibilities in the same way as the reported megaphone use. The relevant question is not whether others made some noise or engaged in disruptive conduct nearby. It is

24

whether similarly situated persons violated the same Ordinance in materially similar circumstances and were intentionally treated differently because of viewpoint.

The Knotts' reliance on the Ordinance's reference to "horn, drum, piano or other musical or percussion instrument" does not change the result. The Ordinance does not prohibit instruments as such; it prohibits reckless generation of unreasonable noise or loud sound likely to cause inconvenience or annoyance to persons of ordinary sensibilities. § 509.03(a)(6). The Knotts do not plead facts establishing those elements as to the escorts.

The Hearing Transcript further weakens the Knotts' argument that Mrs. Knotts' complaints were ignored. Sergeant Dobney acknowledged that Mrs. Knotts complained about other people making noise and threatening comments, but he testified that the threat report did not rise to the level of menacing and that her other complaints did not warrant more than observation. (Hearing Transcript, R. 1-1, PageID #53-55, 68-71.) That testimony shows disagreement with the officers' assessment of competing complaints at a contentious scene. A failure to cite every person accused of disruptive conduct is not unconstitutional selective enforcement.

The Complaint does not plausibly allege viewpoint-based motive. The Knotts heavily rely on the allegation that Sergeant Dobney told Mrs. Knotts that Mr. Knotts could be arrested in the future if he caused "annoyance," with or without amplified sound. (Complaint, R. 1, PageID #9.) "Annoyance" appears in the Ordinance's

25

operative disorderly-conduct language. *See* § 509.03(a). The alleged use of that term therefore does not transform a noise-enforcement warning into direct evidence of message suppression. In addressing a noise ordinance, the Supreme Court in *Ward* noted, "the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." 491 U.S. at 794, 796; *see, e.g.*, *State v. Dorso*, 446 N.E.2d 449, 453 (Ohio 1983) (recognizing that noise ordinances will be "inherently imperfect"). "The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted." *Ward*, 491 U.S. at 800 (quotation omitted). At most, the Knotts offer a competing inference of motive, but courts need not accept conclusory motive labels when the pleaded facts and attached exhibits support an obvious lawful explanation. *Iqbal*, 556 U.S. at 678-82.

The Sixth Circuit's decision in *Gaughan*, supports dismissal. 212 F. App'x 405. There, the plaintiff alleged that he was cited under a noise ordinance near a clinic after complaints about his amplified speech, but the Sixth Circuit affirmed dismissal because the complaint did not specifically allege that police acted because of the content of his speech. *Id.* at 417. The same principle applies here. The Knotts allege protected speech, a noise complaint, and enforcement of a noise ordinance.

26

They do not plead nonconclusory facts showing that officers enforced the Ordinance because of disagreement with the pro-life or religious content of the Knotts' message.

The Knotts' contrary argument depends on piling inferences that: the resident's complaint was viewpoint-based, the escorts committed materially identical Ordinance violations, the officers recognized those violations and intentionally declined enforcement because of viewpoint, and the later municipal dismissal confirms the original citation was unconstitutional. The Complaint does not plausibly plead those facts. It pleads a narrower incident—namely, that officers responded to a complaint about a man with a megaphone, investigated that complaint, and one officer issued a citation under a facially valid noise Ordinance. Because the Knotts' as-applied theory rests on conclusory motive allegations rather than well-pleaded facts, the district court correctly dismissed the claim.

## C.    The Individual-Capacity Claims Against Officer Paratore And Sergeant Dobney Were Properly Dismissed.

The Knotts' individual-capacity claims fail because the Complaint does not plead defendant-specific facts showing that either officer personally violated the Constitution, and the Knotts have not identified clearly established law prohibiting the officers' conduct. Accordingly, the district court's dismissal of the individual-capacity claims should be affirmed.

27

1.    **The Complaint does not plead defendant-specific facts showing a constitutional violation.**

The district court correctly dismissed the individual-capacity claims against Officer Paratore and Sergeant Dobney because the Complaint does not plead facts showing that either officer, through his own individual actions, violated the Knotts' constitutional rights.  Section 1983 does not permit liability based on group pleading or *respondeat superior*.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff suing multiple government officials must plead that each defendant, through that defendant's own conduct, caused the alleged constitutional deprivation. *See Rudd v. City of Norton Shores*, 977 F.3d 503, 512 (6th Cir. 2020) ("Because [plaintiff] has sued many defendants, . . . he must allege that each defendant, through that defendant's own actions, 'subject[ed]' him (or 'cause[d]' him to be subjected) to the constitutional deprivation.") (citing *Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020)).  Applying that rule, the district found that the Knotts largely referred to "Defendants" collectively without distinguishing who committed which allegedly unconstitutional acts.  (Opinion, R. 24, PageID #238-240.)

The Complaint's specific allegations against the officers are limited.  It alleges that Officer Paratore and Sergeant Dobney were members of the Cuyahoga Falls Police Department and "participated in the arrest and citation" of Mr. Knotts. (Complaint, R. 1, PageID #5.)  It alleges that they arrived after the megaphone was

28

no longer in use, spoke with Officer Oldham, did not question other witnesses, and that Mr. Knotts was cited and charged. (Complaint, R. 1, PageID #8-9.) Those allegations do not plausibly plead that either officer personally engaged in viewpoint discrimination, burdened religious exercise, or intentionally discriminated against the Knotts.

The Complaint and its attached Hearing Transcript show neutral enforcement based on a noise complaint, not personal involvement in viewpoint discrimination. Sergeant Dobney testified that the call was dispatched as a report of a man with a megaphone making noise at the women's clinic. (Hearing Transcript, R. 1-1, PageID #47-48.) This is precisely the type of complaint the Ordinance seeks to address. Nothing about that call required officers to evaluate the Knotts' message, and Sergeant Dobney did not know what words had been spoken through the megaphone and that the content of the speech did not factor into enforcement. (Hearing Transcript, R. 1-1, PageID #65-67, 72-74.) Those facts foreclose a plausible inference that the officers acted because of the Knotts' pro-life or religious viewpoint.

The Knotts' reliance on Sergeant Dobney's alleged statement about future arrest for "annoyance" does not cure the pleading defect, and it does not plausibly establish that Sergeant Dobney violated the Constitution. The Ordinance itself uses the terms "inconvenience" and "annoyance" as part of its disorderly-conduct

29

language.  *See* § 509.03(a).  Viewed in context, the alleged statement reflects, at most, a warning about future enforcement of a noise/disorderly-conduct Ordinance. It does not plausibly show that Sergeant Dobney personally enforced the law because of the Knotts' pro-life or religious viewpoint.

Nor does the Complaint plead a viable individual-capacity claim against Officer Paratore merely because he issued the citation.  (Hearing Transcript, R. 1-1, PageID #59.)  The relevant question is not whether Officer Paratore had some role in the citation, but whether the Complaint pleads facts showing that he issued it for an unconstitutional reason.  Based on the facts, it does not.  The allegations describe ordinary enforcement activity, not intentional viewpoint discrimination.

2.     **The officers did not violate clearly established law by enforcing a facially valid ordinance.**

The Knotts' qualified-immunity argument fares no better.  Appellees' Partial Motion to Dismiss sought dismissal of the Knotts' claims on the ground that the Complaint failed to plead a constitutional violation by either officer, and the district court correctly held that the officers could not be liable for enforcing an Ordinance that was not so grossly and flagrantly unconstitutional that a reasonable officer would be required to disregard it.  (Opinion, R. 24, PageID #239.)  That principle is not limited to a formally pleaded qualified-immunity defense—it is part of the reason the Complaint failed to state a plausible damages claim against the individual officers.  Regardless, this Court may affirm on any ground supported by the record.

30

*See Long v. Insight Communications of Cent. Ohio, LLC*, 804 F.3d 791, 794 (6th Cir. 2015).

Even assuming qualified immunity is analyzed directly, Appellants identify no clearly established law that would have put every reasonable officer on notice that responding to a resident complaint about a man using a megaphone and issuing a citation under a facially valid noise ordinance violated the First Amendment, Free Exercise Clause, or Equal Protection Clause. The Supreme Court and Sixth Circuit have repeatedly recognized that officers generally may enforce a properly enacted law that has not been invalidated unless the law is so grossly and flagrantly unconstitutional that any reasonable officer would recognize its defects. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979); *Freed v. Thomas*, 81 F.4th 655, 660 (6th Cir. 2023). Broad, conclusory principles prohibiting viewpoint discrimination do not clearly establish the unlawfulness of these officers' conduct in the particular circumstances they faced. The Ordinance had not been declared unconstitutional. Reasonable officers were not required to disregard a citizen complaint about a man with a megaphone or to adjudicate, on the sidewalk, the full constitutional validity of the Ordinance.

For these reasons, the district court correctly dismissed the Knotts' claims against Sergeant Dobney and Officer Paratore.

31

**D.      The Knotts Failed To Plead Municipal Liability Under *Monell*.**

The Knotts' municipal- or *Monell*- liability argument attempts to convert a single citation issued after a resident noise complaint into a Citywide policy of viewpoint discrimination.  The Complaint does not plausibly support that leap.  To state a *Monell* claim, the Knotts had to plead not only an underlying constitutional violation, but also that an official policy, a widespread custom, a final policymaker decision, or deliberate municipal ratification was the "moving force" behind that violation. *See Monell*, 436 U.S. at 694 (1978); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-05 (1997); *Burgess v. Fischer*, 735 F.3d 462, 478-79 (6th Cir. 2013). They did neither.  The district court correctly dismissed the Knotts' *Monell* claim because the pleaded facts and exhibits attached to the Complaint show enforcement of a facially valid noise ordinance in response to a complaint about amplified sound—not a municipal policy or custom of suppressing pro-life speech.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 557.

> **1.      The Knotts' ratification theory fails because the municipal dismissal does not establish policymaker approval of unconstitutional conduct.**

The Knotts' ratification theory fails because prosecution of a municipal citation does not, by itself, plausibly allege that a final policymaker approved unconstitutional conduct.  Ratification requires more than a municipality's failure to reverse an officer's decision or the ordinary continuation of legal proceedings.

32

Plaintiffs must plead facts showing that a final municipal policymaker approved both the subordinate's decision and the unconstitutional basis for that decision. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Felton v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993); *Burgess*, 735 F.3d at 479. The Complaint does not identify any final policymaker, does not allege that such a policymaker knew of and adopted any viewpoint-discriminatory motive, and does not plead that the City Prosecutor's Office acted as a final policymaker for the City on enforcement policy. Instead, Appellants infer ratification from the mere fact that the charge remained pending until the day of trial. That inference is speculative. A prosecutor's decision to proceed, continue evaluating, or later dismiss a charge is not an admission that the original citation was unconstitutional, much less proof that the City adopted a policy of viewpoint discrimination. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 557.

The Sentencing Order attached to the Knotts' Complaint underscores the weakness of the Knotts' theory. The Sentencing Order only confirms that the charge was dismissed. It does not state that the Ordinance was unconstitutional, that the citation was improper, or that any City actor acted with viewpoint-based animus. Appellants' argument improperly treats a dismissal without an adverse constitutional finding as evidence of unconstitutional ratification. *Monell* liability cannot rest on speculation about why a prosecutor dismissed a minor municipal charge on the day

33

of trial. *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996) (requiring showing that policymakers had notice and deliberately chose a course of action); *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 495-96 (6th Cir. 2020) (rejecting municipal-liability theory unsupported by facts showing policymaker approval or a custom). The dismissal therefore cannot plausibly establish that the City ratified unconstitutional conduct.

Further, the alleged involvement of both the police department and prosecutor's office does not make the claim plausible. Appellants characterize the case as "coordinated" multi-department viewpoint discrimination, but the Complaint pleads no facts showing coordination for an unconstitutional purpose. The ordinary sequence of a citation, transfer to municipal court, and later dismissal does not imply that multiple City departments adopted a discriminatory policy. It reflects the routine processing of a municipal charge. The Knotts' proposed inference would effectively make every prosecuted citation a potential *Monell* ratification claim whenever the plaintiff later alleges that the citation was unconstitutional, which is unsupported by the law. *See Felton*, 988 F.2d at 656; *Burgess*, 735 F.3d at 479; *Pineda*, 977 F.3d at 495-96.

### 2. The Knotts failed to plead an underlying constitutional violation or municipal policy, custom, or practice.

The Knotts' allege that an "unwritten policy" exists for the Cuyahoga Falls Police department to only enforce the Ordinance against pro-life protestors.

34

(Complaint, R. 1, PageID #15.)  While the Complaint pleads "prior occasions" where "those opposed to [the Knotts'] message have played amplified music, made threats to the Knotts, and used other noise-creation tactics in plain view of police and with no consequence[,]" (Complaint, R. 1, PageID #3.), those allegations lack the detail necessary to show a municipal custom.  Critically, the Knotts do not identify who complained, which officer responded, what specific Ordinance violation was observed, the volume or duration of the alleged conduct, whether it was audible to or affected nearby residents, whether any resident complained, or whether any final City policymaker had notice of comparable unconstitutional enforcement.  More significantly, while the Complaint references prior occasions on which the Knotts engaged in pro-life advocacy, (Complaint, R. 1, PageID #2), it does not contain factual allegations that the City silenced their views on those occasions—must less that any such suppression was attributable to an "unwritten policy."

That distinction matters.  The December 28 citation followed a resident complaint specifically reporting "a man with a megaphone making noise" near the clinic. (Hearing Transcript, R. 1-1, PageID #47-48.)  The Complaint does not allege a comparable resident complaint about escorts' whistles or kazoos.  Nor does it allege facts showing that the escorts' conduct created the same type of unreasonable amplified noise likely to inconvenience or annoy persons of ordinary sensibilities. The Knotts' theory depends on the assumption that any counter-noise by escorts was

35

equivalent to a megaphone-based noise complaint. *Monell* requires factual allegations supporting a municipal policy or custom—not assumptions, labels, or disagreement with officers' on-scene judgment. *See Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Iqbal*, 556 U.S. at 678-79.

Appellants' reliance on Sergeant Dobney's alleged "annoyance" statement does not create municipal liability. The Knotts' interpretation—that the statement was a freestanding threat to arrest Mr. Knotts for his viewpoint, with or without a violation—is not the only, or even the most plausible, inference when the statement is viewed against the pleaded context: officers had responded to a resident noise complaint about a man with a megaphone. *See Iqbal*, 556 U.S. at 681-82 (courts may reject implausible inferences where an obvious alternative explanation exists).

Further, Sergeant Dobney's supervisory rank does not transform his alleged statement into municipal policy. *Monell* does not impose liability whenever a supervisory officer participates in an enforcement decision. Final policymaking authority is a question of state law, and liability attaches only where the official has final authority to establish municipal policy with respect to the action ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). The Knotts do not plead that Sergeant Dobney had final policymaking authority for the City.

The Knotts cannot avoid *Monell*'s requirements by emphasizing that their First Amendment challenge is "as applied." An as-applied challenge may focus on

36

how a law was applied to a particular plaintiff, but municipal liability under § 1983 still requires municipal action. *Monell*, 436 U.S. at 691-94; *Brown*, 520 U.S. at 403-04. The label "as applied" does not relieve the Knotts of pleading facts showing that the alleged constitutional violation resulted from a City policy, custom, final policymaker decision, or deliberate ratification. Their argument conflates two distinct inquiries: (1) whether the Ordinance was applied unconstitutionally to them, and (2) whether any such violation is attributable to the City itself. Even if the Knotts believed the citation was mistaken or unconstitutional, a single enforcement decision by officers does not establish municipal liability absent facts connecting that decision to municipal policy. *See Tuttle*, 471 U.S. at 823-24; *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).

Finally, the Knotts' municipal-liability theory rests on conclusory motive allegations that are undermined by the exhibits attached to the Complaint. At the Rule 12 stage, courts may consider exhibits attached to the complaint, and when an exhibit contradicts conclusory allegations, the exhibit controls. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012). Here, the Hearing Transcript attached to the Complaint reflects that officers responded to a noise complaint about a man with a megaphone, Sergeant Dobney did not know what words were spoken through the megaphone, and the content of the speech did not

37

factor into enforcement.  (Hearing Transcript, R. 1-1, PageID #47-48, 65-67, 72-74.)

Those facts support that enforcement was based on a noise complaint involving

amplification.  *See Iqbal*, 556 U.S. at 679-80.  The Knotts' preferred inference—that

the City maintained a custom of suppressing pro-life speech while tolerating pro-

choice counter-noise—requires multiple speculative steps unsupported by concrete

factual allegations.  Rule 12 requires plausibility, not possibility.  *Twombly*, 550 U.S.

at 557; *Iqbal*, 556 U.S. at 678.

**E.    The Free Exercise And Equal Protection Claims Were Properly Dismissed.**

**1.    The Free Exercise claim fails because the Ordinance is neutral, generally applicable, and imposes at most an incidental burden.**

The district court correctly dismissed the Knotts' Free Exercise claim because

the Ordinance is neutral, generally applicable, and regulates sound without reference

to religion.  The Ordinance applies to all persons, and it does not regulate religious

activity, religious creed, or religious affiliation.  A neutral and generally applicable

law does not violate the Free Exercise Clause merely because it incidentally burdens

religiously motivated conduct.  *See Kentucky ex rel. Danville Christian Academy,*

*Inc. v. Beshear,* 981 F.3d 505, 509 (6th Cir. 2020) (citing *Roberts v. Neace,* 958 F.3d

409, 413 (6th Cir. 2020)).  When the burden on a plaintiff's religious practices is

incidental, it is not subject to strict scrutiny.  *Id.* at 510 (citing *Roberts*, 958 F.3d at

413).  "[A] burden must be more than a mere inconvenience to rise to the level of a

38

constitutional injury; it must place significant pressure on [a plaintiff] to forego religious precepts or to engage in religious conduct." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 999 (7th Cir. 2006) (internal quotation marks omitted).  Here, the Ordinance is only an incidental burden on the Knotts' religious exercise.  It does not prevent them from worshipping or engaging in activities central to their religious beliefs, and the Ordinance does not single out religious conduct for enforcement. Instead, the Ordinance merely prevents an individual from causing "inconvenience, annoyance or alarm" to "persons of ordinary sensibilities" by means of a "sound amplifying device."  Such language constitutes, at most, an incidental burden on religious expression, and is not unconstitutional.

The Knotts' religious motivation does not change the analysis.  The Knotts allege that their sidewalk advocacy is grounded in sincere religious conviction and that amplification helps them convey their message.  (Complaint, R. 1, PageID #2, 6-8, 17.)  The Knotts do not allege that the City barred them from remaining on the sidewalk or continuing unamplified advocacy; their claims focus on amplified sound and the December 28 citation.  (*See generally* Complaint, R. 1, PageID #1-24; Opinion, R. 24, PageID #249.)  A law does not impose a substantial burden merely because it makes religious exercise less convenient, less effective, or more difficult in a preferred manner.  *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-37 (6th Cir. 2007); *Civil Liberties for Urban Believers v. City*

39

*of Chicago*, 342 F.3d 752, 761-62 (7th Cir. 2003); *Vision Church*, 468 F.3d at 999. Even if Plaintiffs are motivated by sincerely held religious beliefs, their beliefs "[are] not determinative where there is a neutral rule of general applicability." *Kentucky ex rel. Danville Christian Academy*, 981 F.3d at 509. The district court therefore correctly concluded that any burden on the Knotts' religious exercise was, at most, incidental. (Opinion, R. 24, PageID #250-251.)

Nor do the Ordinance's exemptions make the Ordinance non-neutral or non-generally applicable. The exemptions apply to warning and alarm devices, permitted events, permitted parades, and certain live outdoor performances or concerts conducted in specified contexts. § 509.03(a)(6). They do not single out religion for disfavored treatment. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533-46 (1993). Indeed, one exemption includes religious organizations among the entities whose qualifying live outdoor musical or theatrical events may fall outside the Ordinance's prohibition. § 509.03(a)(6). The Knotts therefore cannot plausibly claim that the Ordinance targets religious exercise.

The Knotts' reliance on *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021), is misplaced. *Fulton* involved a contractual scheme that vested officials with discretion to grant individualized exemptions from a nondiscrimination requirement. *Id.* at 535-37. The Ordinance contains no comparable mechanism allowing officials to decide, case by case, whether a religious speaker may be exempted from the noise

40

rule. Its exemptions are categorical and objective, not discretionary religious exemptions. A law does not lose its general applicability merely because it contains objective, categorical exceptions for distinct conduct or event contexts that are not comparable to the religious conduct at issue. *See Emp't Div. v. Smith*, 494 U.S. 872, 885 (1990); *Lukumi*, 508 U.S. at 537; *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1297-98 (10th Cir. 2004).

The Ordinance also does not permit secular conduct that undermines the City's asserted interests in a materially similar way while prohibiting religious conduct. General applicability is undermined only where the government prohibits religious conduct while permitting comparable secular conduct that creates the same asserted harm. *Fulton*, 593 U.S. at 534; *Lukumi*, 508 U.S. at 542-46; *Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 480-81 (6th Cir. 2020). Permitted parades, warning devices, and live outdoor performances are not materially comparable to ad hoc amplified sound on a public sidewalk that generated a resident complaint. The Complaint pleads no facts showing that exempted events generated similar resident complaints, similar sidewalk disruption, or similar unreasonable amplified noise in comparable circumstances. The district court properly dismissed the Free Exercise claim.

41

## 2. The Equal Protection claim fails because the Knotts do not plausibly allege similarly situated comparators or intentional discrimination.

The district court also correctly dismissed the Knotts' Equal Protection claim. To establish selective enforcement "that rises to the level of a violation of their equal protection rights, the plaintiffs must prove *intentional, purposeful* discrimination." *Birth Control Centers, Inc. v. Reizen*, 743 F.2d 352, 359 (6th Cir. 1984) (emphasis in original). The Knotts allege that pro-life and religious speakers were treated differently from clinic escorts and favored institutional speakers. (Complaint, R. 1, PageID #18-19.) The relevant comparator inquiry requires similarity in all relevant or material respects, not merely participation in the same protest environment. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011). The Constitution does not require officers to treat unlike complaints identically or to take symmetrical enforcement action against opposing sides at a protest scene. *See Nieves v. Bartlett*, 587 U.S. 391, 405-06 (2019) (recognizing the discretion inherent in policing decisions); *Wayte v. United States*, 470 U.S. 598, 607-08 (1985) (selective-enforcement claims require both discriminatory effect and discriminatory purpose).

Appellants' reliance on *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) is misplaced. Circumstantial evidence may establish discriminatory intent, but plaintiffs must still plead facts making discriminatory

42

intent plausible. *Id.* at 266-68; *Iqbal*, 556 U.S. at 678-80. Here, the pleaded facts and exhibits attached to the Complaint support a lawful explanation: officers responded to a resident noise complaint involving a man with a megaphone. (Complaint, R. 1, PageID #8; Hearing Transcript, R. 1-1, PageID #47-48.) Appellants' contrary inference, that officers acted because of hostility to pro-life or religious speech, requires speculation unsupported by concrete comparator allegations or evidence of content-based enforcement. Courts need not accept that kind of speculative inference at the pleading stage. *Iqbal*, 556 U.S. at 679-80; *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504-05 (6th Cir. 2013).

Because the Knotts failed to plausibly allege that similarly situated comparators were treated differently because of viewpoint, the Equal Protection claim was properly dismissed. The district court correctly recognized that the Equal Protection claim duplicated the Knotts' failed First Amendment theories and added no independently plausible basis for relief. (Opinion, R. 24, PageID #253-254.)

## F.    The District Court Properly Declined Supplemental Jurisdiction Over The State-Law Claims.

The district court also acted within its discretion in declining supplemental jurisdiction over the Knotts' remaining state-law claims after dismissing all federal claims. Under 28 U.S.C. § 1367(c)(3), a district court may decline supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction."

43

That is precisely what occurred here. The district court dismissed the Knotts' federal claims—Counts I through V—with prejudice and then declined to exercise supplemental jurisdiction over Counts VI through VIII, dismissing those state-law claims without prejudice. (Opinion, R. 24, PageID #254; Judgment Entry, R. 25, PageID #255.)

That ruling accords with the ordinary practice in this Circuit. When all federal claims are dismissed before trial, the balance of judicial economy, convenience, fairness, and comity generally points toward declining jurisdiction over remaining state-law claims. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010). This case was resolved at the pleading stage, before discovery, merits adjudication, or trial. No exceptional circumstance required the federal court to retain state constitutional and replevin claims after the federal constitutional claims were dismissed.

The Knotts do not identify any independent reason why the district court was required to keep those claims. Their argument is derivative: if the federal claims are reinstated, the state-law claims should return as well. However, if this Court affirms dismissal of the federal claims, there is no basis to disturb the district court's discretionary decision to dismiss the state-law claims without prejudice. The dismissal preserved the Knotts' ability to pursue those claims, if appropriate, in state

44

court while avoiding unnecessary federal adjudication of state-law questions. Accordingly, the supplemental-jurisdiction ruling should be affirmed along with the dismissal of the federal claims.

## G.   The District Court Did Not Abuse Its Discretion In Dismissing The Federal Claims With Prejudice.

### 1.   The Knotts never properly moved for leave to amend or submitted a proposed amended complaint.

The district court did not abuse its discretion by dismissing the federal claims with prejudice.  Although the Knotts contend that they "should have been given leave to amend to cure any deficiencies," the Knotts were represented by counsel, opposed Defendants' motion to dismiss, and had the opportunity to seek leave to amend before the district court ruled.  They did not file a motion for leave to amend, did not attach a proposed amended complaint, and did not identify specific additional facts that would cure the pleading defects.  A district court is not required to sua sponte invite amendment after granting a Rule 12(b)(6) motion.  *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000) (acknowledging that "**Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies** of the complaint and then an opportunity to cure those deficiencies") (emphasis original).

Nor is a bare request for amendment, if made in briefing, enough.  The Sixth Circuit has repeatedly held that a plaintiff must properly move to amend and identify

45

the substance of the proposed amendment; a request for leave embedded in an opposition brief or made without a proposed amended complaint does not preserve an entitlement to amendment. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014). In fact, in *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008), this Court rejected plaintiffs' argument that when a district court plans to grant a motion to dismiss, it must first allow the parties an opportunity to amend. *Id.* at 438. In doing so, this Court stated: "Such a rule is not only wholly without support, it would render a motion to dismiss useless in disposing of unfit claims. Importantly, Plaintiffs never requested leave for additional amendments, and it is not the district court's role to initiate amendments." *Id.* Furthermore, a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought. *Id.* (quoting *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1042 (6th Cir. 1991)).

Courts need not guess what additional allegations a plaintiff might add or how those allegations would cure the complaint. That principle is especially important here because the Knotts' appellate argument identifies no concrete amendment that would change the result. The Knotts do not point to an omitted Ordinance provision, an omitted policymaker allegation, a proposed comparator with materially similar noise facts, or any newly pleaded facts showing that officers enforced the ordinance

46

because of viewpoint rather than a resident noise complaint. Without a proposed amendment, the Knotts cannot show that the district court abused its discretion by entering judgment on the federal claims after determining that those claims failed as pleaded.

### 2. Amendment would be futile because the Knotts' theories fail as a matter of law.

In any event, amendment would be futile. Leave to amend may be denied where the amended pleading could not withstand a motion to dismiss. *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005). The defects in the Knotts' federal claims are legal, not merely factual. The Ordinance regulates unreasonable amplified noise rather than speech content; the Complaint and its attached exhibits show enforcement based on a resident complaint about a man with a megaphone; and the Knotts remained free to engage in unamplified advocacy. (Complaint, R. 1, PageID #8-9; Hearing Transcript, R. 1-1, PageID #47-48, 67, 72-74; Opinion, R. 24, PageID #235-236, 243, 247, 249.)

No amendment can create a First Amendment right to use amplification free from reasonable noise regulation. No amendment can convert a single citation issued after a noise complaint into municipal liability absent facts establishing an underlying constitutional violation and a municipal policy, custom, or final policymaker decision. And no amendment can overcome qualified immunity unless the Knotts identify clearly established law placing beyond debate that these officers

violated the Constitution by enforcing a facially valid noise ordinance in response to a citizen complaint about amplified sound. The Knotts have identified no such authority.

The Knotts' proposed path to amendment, to the extent one can be inferred, would merely add detail to theories the district court correctly rejected: that event-related exemptions make the ordinance content based, that escorts were comparable because they used whistles and kazoos, that the dismissed municipal charge proves ratification, and that the officers' use of the word "annoyance" shows viewpoint hostility. Those theories fail even accepting the pleaded facts and attached exhibits. Additional labels or elaboration would not cure the legal insufficiency. *See Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 844 (6th Cir. 2012); *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010).

## CONCLUSION

Appellees respectfully request that the district court's decision dismissing this case be affirmed.

s/ Paul J. Schumacher

Paul J. Schumacher, Esquire
*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

Counsel for Defendants-Appellees hereby certifies that the foregoing brief complies with the type-volume limitation provided in Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 12,906 words in Times New Roman font (14-point). The word processing software used to prepare this brief was Microsoft Office Word in the Enterprise version of Microsoft Office 365 Applications.

s/ Paul J. Schumacher
Paul J. Schumacher, Esquire
*Counsel for Defendants-Appellees*

Dated: July 22, 2026

49

# CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2026, I electronically filed with the Clerk's Office of the United States Court of Appeals for the Sixth Circuit the foregoing Opening Brief Defendants-Appellees and further certify that opposing counsel will be notified by the appellate CM/ECF system.

s/ Paul J. Schumacher
Paul J. Schumacher, Esquire
*Counsel for Defendants-Appellees*

50

# ADDENDUM

Pursuant to Sixth Circuit Rule 30(g), Defendants-Appellees designate the

following documents from the lower court records as relevant to the instant appeal:

| Record Entry | Description | PageID # Range |
|---|---|---|
| 1 | Complaint | 1-24 |
| 1-1 | Hearing Transcript | 25-82 |
| 1-2 | Sentencing Order | 83-84 |
| 3 | Motion for Preliminary Injunction | 101-116 |
| 12 | Opposition to Motion for Preliminary Injunction | 137-152 |
| 16 | Partial Motion to Dismiss Plaintiffs' Complaint | 165-167 |
| 16-1 | Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Complaint | 168-192 |
| 18 | Opposition to Partial Motion to Dismiss Plaintiffs' Complaint | 195-218 |
| 20 | Reply in Support of Motion to Dismiss Plaintiffs' Complaint | 225-233 |
| 23 | Order to Stay Motion for Preliminary Injunction | 234 |
| 24 | Memorandum Opinion and Order | 235-254 |
| 25 | Judgment Entry | 255 |

36313326.1

51