No. 26-3395

# In the United States Court of Appeals for the Sixth Circuit

ZACHARY KNOTTS; and LINDSAY KNOTTS,

*Plaintiffs–Appellants,*

*v.*

The CITY OF CUYAHOGA FALLS; DYLAN PARATORE, in his individual and official capacities; and BRADFORD DOBNEY, in his individual and official capacities,

*Defendants–Appellees.*

On Appeal from the United States District Court
for the Northern District of Ohio, No. 5:25-cv-01120 (Adams, J.)

## Plaintiffs-Appellants' Reply Brief

Geoffrey R. Surtees
**AMERICAN CENTER**
    **FOR LAW & JUSTICE**
P.O. Box 60
New Hope, KY 40052
Tel: (502) 827-0951

Stuart J. Roth
Andrew J. Ekonomou
Christina A. Compagnone
Nathan J. Moelker
Liam R. Harrell
**AMERICAN CENTER**
    **FOR LAW & JUSTICE**
201 Maryland Ave. NE
Washington, DC 20002
Tel: (202) 546-8890
Email: lharrell@aclj.org
*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................i

TABLE OF AUTHORITIES................................................................................ iii

INTRODUCTION ...............................................................................................1

ARGUMENT .......................................................................................................2

    I.      The Ordinance Is Content-Based and Speaker-Based on Its Face; a "Limited Event-Based" Framing Fails. .......................................3

        A.    The Plain Text of the Ordinance Controls. ................................3

        B.    The City's "Limited Event-Based" Framing Fails.....................8

        C.    Even if Intermediate Scrutiny Applied, the Complaint States a Claim Under *Ward*........................................................10

    II.    Because the Complaint Plausibly Alleges Viewpoint-Discriminatory Enforcement, Mere Denial in the Hearing Transcript Does Not Entitle the City to Dismissal at the Pleading Stage. .......................................................................................................14

    III.    Individual Capacity Claims Against Dobney and Paratore ......21

        A.    Specific Conduct .................................................................21

        B.    Qualified Immunity ................................................................23

    IV.    Municipal Liability is Plausibly Alleged Through Ratification and Custom.....................................................................................24

    V.    The Free Exercise & Equal Protection Claims Independently Survive...........................................................................................28

        A.    Free Exercise.........................................................................29

B.    Equal Protection...........................................................................30

VI.    Dismissal With Prejudice was Abuse of Discretion. ...................32

CONCLUSION ................................................................................................38

CERTIFICATE OF COMPLIANCE ...................................................................39

CERTIFICATE OF SERVICE ............................................................................40

# TABLE OF AUTHORITIES

**Cases**

*Arkansas Writers' Project, Inc. v. Ragland,*
  481 U.S. 221 (1987) ...................................................................5

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................14, 15

*Baily v. City of Ann Arbor,*
  860 F.3d 382 (2017).................................................................15

*Barr v. American Ass'n of Political Consultants,*
  591 U.S. 610 (2020) ...................................................................4

*Begala v. PNC Bank Ohio Nat'l,*
  No. 1:97-cv-00717 (S.D. Ohio) ...............................................36

*Begala v. PNC Bank, Ohio, N.A.,*
  214 F.3d 776 (6th Cir. 2000) ...................................................34

*Bible Believers v. Wayne County,*
  805 F.3d 228 (6th Cir. 2015) ...................................................20

*Bogie v. Rosenberg,*
  705 F.3d 603 (7th Cir. 2013) ...................................................15

*Citizens United v. FEC,*
  558 U.S. 310 (2010) ...................................................................4

*City of Austin v. Reagan National Advertising of Austin, LLC,*
  596 U.S. 61 (2022) .................................................................5, 6

*City of Ladue v. Gilleo,*
  512 U.S. 43 (1994) ...................................................................12

*Coley v. Lucas Cnty.,*
  799 F.3d 530 (6th Cir. 2015) ..............................................26, 27

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*,
    428 F.3d 223 (6th Cir. 2005) ...............................................................24

*Foman v. Davis*,
    371 U.S. 178 (1962) ...............................................................33

*Fulton v. Philadelphia*,
    593 U.S. 522 (2021) ...............................................................29

*Gaughan v. City of Cleveland*,
    212 F. App'x 405 (6th Cir. 2007) ...............................................................21

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ...............................................................23

*Harrington v. City of Brentwood*,
    726 F.3d 861 (6th Cir. 2013) ...............................................................12

*Ison v. Madison Local Sch. Dist. Bd. of Educ.*,
    3 F.4th 887 (6th Cir. 2021) ...............................................................23

*Jones v. Duncan*,
    840 F.2d 359 (6th Cir. 1988) ...............................................................31

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022) ...............................................................28, 30

*Kuyat v. BioMimetic Therapeutics, Inc.*,
    747 F.3d 435 (6th Cir. 2014) ...............................................................34

*Kuyat v. BioMimetic Therapeutics, Inc.*,
    No. 3:11-cv-00653 (M.D. Tenn.) ...............................................................35

*Leatherman v. Tarrant Cnty. Narcotics Intell. & Coordination Unit*,
    507 U.S. 163 (1993) ...............................................................31

*Matal v. Tam*,
    582 U.S. 218 (2017) ...............................................................17

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ...............................................................11

iv

*Mich. Surgery Inv., LLC v. Arman,*
  627 F.3d 572 (6th Cir. 2010) ...................................................................35, 36

*Monell v. Dep't of Soc. Servs.,*
  436 U.S. 658 (1978) .........................................................................................25

*Newberry v. Silverman,*
  789 F.3d 636 (6th Cir. 2015) ...................................................................33, 36

*Nieves v. Bartlett,*
  587 U.S. 391 (2019) .........................................................................................22

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986) .........................................................................................25

*PR Diamonds, Inc. v. Chandler,*
  364 F.3d 671 (6th Cir. 2004) ........................................................................34

*PR Diamonds, Inc. v. Chandler,*
  No. 1:01-cv-00012 (S.D. Ohio) .....................................................................36

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ..............................................................................3, 4, 7, 8

*Reform America v. City of Detroit,*
  37 F.4th 1138 (6th Cir. 2022) ................................................................13, 14

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
  515 U.S. 819 (1995) .........................................................................................17

*Saia v. New York,*
  334 U.S. 558 (1948) .........................................................................................13

*Sisters for Life, Inc. v. Louisville-Jefferson County,*
  56 F.4th 400 (6th Cir. 2022) ........................................................................11

*Smith v. City of Salem,*
  378 F.3d 566 (6th Cir. 2004) ........................................................................31

*Sorrell v. IMS Health Inc.,*
  564 U.S. 552 (2011) ...........................................................................................4

v

*Stemler v. City of Florence,*
    126 F.3d 856 (6th Cir. 1997) ........................................................18, 28, 30, 31

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,*
    552 F.3d 430 (6th Cir. 2008) ...................................................................34

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,*
    No. 1:05-cv-00519 (S.D. Ohio) ...............................................................35

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,*
    342 F.3d 634 (6th Cir. 2003) ...................................................................33

*United States v. Anderson,*
    923 F.2d 450 (6th Cir. 1991) ...................................................................19

*Vill. of Willowbrook v. Olech,*
    528 U.S. 562 (2000) .................................................................................31

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ............................................................................10, 11

*Wayte v. United States,*
    470 U.S. 598 (1985) ............................................................................18, 19

*Wesley v. Campbell,*
    779 F.3d 421 (6th Cir. 2015) ...................................................................23

*Whren v. United States,*
    517 U.S. 806 (1996) .................................................................................24

**Statutes**

Cuyahoga Falls Ordinance § 509.03(a)(6)..................................................1, 3, 7

vi

## INTRODUCTION

The City's brief chiefly rests on a single, repeated reframing: that Ordinance § 509.03(a)(6) contains only a "limited event-based exemption" and is therefore content-neutral. This cannot be reconciled with the Ordinance's text. The Ordinance exempts live outdoor musical or theatrical performances or concerts when they are "conducted *under the auspices of or on property owned by any educational, charitable, governmental or religious organization.*" An identical performance in an identical location is lawful if sponsored by a favored institutional speaker and unlawful if conducted by a private citizen. That is a speaker-based preference on the face of the statute. Under *Reed*, *Barr*, *Sorrell*, *Citizens United*, and *Ragland*, it is content-based. The City's preferred characterization cannot rewrite the words "under the auspices of."

The City next asks this Court to treat selected passages from the hearing transcript as conclusive of motive and to dismiss the as-applied claims at the pleading stage. That is not how Rule 12 operates. The Complaint alleges that Sergeant Dobney threatened future arrest for causing

1

"annoyance" with or without amplified sound, that officers ignored the escorts' instruments while citing only Mr. Knotts, and that the City maintained the charge through the eve of trial. Those well-pleaded facts, accepted as true, state claims for viewpoint discrimination, individual liability, and municipal liability through ratification and custom. The transcript creates a factual dispute; it does not erase the allegations.

The Free Exercise and Equal Protection claims survive independently on the same core facts—the speaker-based exemptions and the one-sided enforcement. And the district court's decision to dismiss the federal claims with prejudice, without any request from Defendants and without applying the *Foman* factors, remains an abuse of discretion.

The City's arguments fail. The judgment should be reversed.

## ARGUMENT

The City's brief raises three principal arguments: (1) the Ordinance is content-neutral because its exemption is merely "limited" and "event-based"; (2) selected passages from the hearing transcript conclusively negate inferences of viewpoint discrimination; and (3) those two conclusions, in

2

turn, dispose of the remaining claims. None of those moves survives scrutiny. The Ordinance's plain text is speaker-based and therefore content-based. The well-pleaded viewpoint-driven enforcement allegations are not erased by the transcript at this stage. The individual capacity, municipal liability, Free Exercise, and Equal Protection claims follow from the same core facts.

## I.     The Ordinance Is Content-Based and Speaker-Based on Its Face; a "Limited Event-Based" Framing Fails.

On its face, § 509.03(a)(6) discriminates based on the speaker, allowing certain events by certain organizations while prohibiting those same activities, in the same location, for individuals. A listed organization can hire a rock band to play precisely where Appellants faced arrest for their small megaphone. This content discrimination is forbidden by the Constitution.

### A. The Plain Text of the Ordinance Controls.

The starting—and ending—point for classifying the Ordinance is its plain text. Courts determine whether a restriction is content-based by examining the law's text, not by accepting a government's preferred label. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015). As the Supreme Court

3

explained, "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 163. The same applies when a law draws distinctions based on the speaker's identity and that preference reflects content preference. *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) ("Speech restrictions based on the identity of the speaker are all too often simply a means to control content.").

The Supreme Court repeatedly applies these principles, invalidating exemptions which favor certain speakers or expression. In *Barr v. American Ass'n of Political Consultants*, 591 U.S. 610, 619 (2020), the Court held an exception to the Telephone Consumer Protection Act for government debt collection calls was content-based because "the law favors speech made for collecting government debt over political and other speech." Likewise, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564–66, 571 (2011), held a speaker- and content-based burden on pharmaceutical manufacturers triggered heightened scrutiny, emphasizing "it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint discriminatory." *Arkansas*

4

*Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 229–31 (1987), treated as content-based a tax exemption that required officials to classify publications by subject matter, describing such a list as "particularly repugnant to First Amendment principles."

The Ordinance's exemption does exactly what these cases forbid. It does not regulate volume alone, nor does it draw a purely geographic line. It exempts "live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization." The phrase "under the auspices of" is decisive: the same performance in the same location is lawful if sponsored by a favored institutional speaker and unlawful if conducted by an ordinary citizen. That is a speaker-based preference on the face of the statute. Under *Reed*, *Barr*, *Sorrell*, *Citizens United*, and *Ragland*, it is content-based.

*City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022), does not alter the analysis. There the Court held a regulation is not content-based merely because officials must examine a sign's location or

function to determine "on-premises" versus "off-premises" signs. *Id.* at 69. The Court emphasized the distinction turned on "location and purpose," not on "the topic discussed or the idea or message expressed." *Id.* Critically, the Court explained Austin's ordinances "do not single out any topic or subject matter for differential treatment. A sign's message matters only to the extent it informs the sign's relative location." *Id.* In fact, the Court in *City of Austin* even went so far as to say that, under Austin's permissible sign regulation scheme, "[a] sign's substantive message itself is irrelevant to the application of the provisions; there are no content-discriminatory classifications for political messages, ideological messages, or directional messages concerning specific events, ***including those sponsored by religious and nonprofit organizations***." *Id*. at 71 (emphasis added).

The Ordinance here requires *exactly* what *City of Austin* used as an unconstitutional example of content-based discrimination. Officials must classify both the type of expression (musical, theatrical, or concert) *and* the identity of the speaker or sponsor before deciding whether amplification is permitted. That dual inquiry is precisely the kind of content- and speaker-

6

based sorting *Reed* and its progeny forbid. *City of Austin*, far from undermining this conclusion, reasserts it.

The contrast is concrete. Under *Austin*, a billboard advertising a product sold on the same parcel is treated the same regardless of whether the product is pro-life literature or abortion services; the only question is physical location relative to the message. Under the Cuyahoga Falls Ordinance § 509.03(a)(6), a live outdoor musical performance celebrating unborn life is lawful if conducted "under the auspices of" a church or university, but the identical performance—same songs, same volume, same public sidewalk—is unlawful if conducted by two private citizens. The government must first ask what kind of expression is occurring and then ask who is sponsoring it. That is precisely the dual classification *Reed* condemned when it held laws "defining regulated speech by particular subject matter" or by "function or purpose" that reflect content preferences are content-based on their face. 576 U.S. at 163. The plain text therefore controls, and the City's "limited event-based exemption" label cannot rewrite it.

## B. The City's "Limited Event-Based" Framing Fails.

The City attempts to neutralize the exemption by repeatedly labeling it a "limited event-based exemption." That characterization is a non-starter under controlling law. *Reed* expressly held that "the fact that a distinction is event based does not render it content neutral." 576 U.S. at 170. The City's preferred label therefore cannot prevail even on its own terms. Under the Ordinance, a solo religious advocate using a megaphone on a public sidewalk is punished; a church-sponsored concert generating equivalent or greater decibel levels a block away is exempt—not because of how loud it is, but because of who is sponsoring it.

The Ordinance's text confirms the point. It does not exempt all live outdoor musical or theatrical performances or concerts; it exempts only those "conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization." The operative language therefore contains two independent conditions: the type of event *and* the identity of the speaker or sponsor. An ordinary citizen who stages the identical musical performance on a public sidewalk remains fully

8

subject to the Ordinance. The same performance, if conducted under the auspices of a favored institutional speaker, is exempt. The exemption follows the speaker, not merely the event.

In response, the City argues that "[t]he ordinance does not exempt all amplified speech by educational, charitable, governmental, or religious organizations." Appellee Br. at 14. True enough. But what the Ordinance *does* exempt is all musical performances, theatrical performances, and other events conducted "under the auspices of" that organization, regardless of its location, scope or effect. The City claims "[i]t is not a license for favored institutions to amplify any message anywhere in the City." *Id.* Simply put, this is wrong on the face of the Ordinance. So long as their conduct is labeled as a musical or theatrical performance, favored institutions are given a license to say whatever they want, and whenever and wherever they want. This is not an "event-based" exemption; it is speaker-based.

Numerous hypotheticals show this. Suppose a local university sponsors an outdoor, pro-life play on the public sidewalk outside the clinic. The performance is exempt, no permits needed or requirements follow.

9

Simply being "under the auspices of" the school and labeled a "performance" is sufficient. The identical performance at identical volume, staged by the Knotts themselves without institutional sponsorship, is prohibited. The only difference is speaker identity or sponsorship. Because the legality of amplification turns on *who* is speaking or sponsoring the expression, the Ordinance draws a speaker-based line. That line is content-based under *Reed*, *Barr*, *Sorrell*, *Citizens United*, and *Ragland*; the City's preferred label does not change the analysis, as confirmed by *City of Austin*.

### C. Even if Intermediate Scrutiny Applied, the Complaint States a Claim Under *Ward*.

Granting, *arguendo*, the City's framing the Ordinance as content-neutral, the facial challenge still survives. Content-neutral time, place, or manner restrictions must be "narrowly tailored to serve a significant governmental interest" and must "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Narrow tailoring requires the government demonstrate "alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is

easier." *McCullen v. Coakley*, 573 U.S. 464, 467 (2014). This Court applied that demanding standard in *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 409–11 (6th Cir. 2022), holding a restriction on sidewalk speech near medical facilities was likely not narrowly tailored where the government's means were poorly matched to the identified problem.

The Complaint plausibly alleges that the Ordinance fails both prongs. On narrow tailoring, the Ordinance's own exemptions reveal the mismatch: favored institutional speakers may amplify sound for live outdoor performances and concerts "under [their] auspices" anywhere in the City, though such events are typically far more disruptive than a battery-powered megaphone. A narrowly tailored sound ordinance "focuses on the source of the evils the city seeks to eliminate—excessive and inadequate sound amplification—and eliminates them without, at the same time, banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward*, 491 U.S. at 799 n.7. By regulating sound quieter than ambient traffic noise, the Ordinance burdens substantially more speech than

11

is necessary to further the City's asserted interest, while simultaneously exempting institutionally sponsored amplified sound of any volume.

The City responds, "The Knotts do not plead any actual exempt event, its volume, duration, location, proximity to residences, or any instance in which the City tolerated louder exempt sound while enforcing against them." Appellee Br. at 18. This misses the point entirely. The point is not any particular event. The point is the Ordinance, *on its face*, permits exempt events without any limitation as to volume, duration, or location whatsoever. The Ordinance's text is no "hypothetical."

The Ordinance also fails to leave open ample alternative channels. An alternative is not "ample" if it does not permit the speaker to reach the intended audience with comparable communicative effect. *City of Ladue v. Gilleo*, 512 U.S. 43, 56–57 (1994); *Harrington v. City of Brentwood*, 726 F.3d 861, 865 (6th Cir. 2013). The Complaint alleges that, without amplification, the Knotts' voices are "easily drowned out by the sound of the traffic on the nearby State Road and the escorts' whistles and kazoos." *Complaint*, R.1, PageID #8. Their message is time-sensitive and location-specific—directed at

12

women entering the clinic at the moment of weighty decision. Generic alternatives such as posters, leaflets, or the internet cannot reach that audience, in that forum, at that time. Taking those allegations as true, continued unamplified speech is not an ample alternative as a matter of law.

*Reform America v. City of Detroit*, 37 F.4th 1138, 1159 (6th Cir. 2022), is not to the contrary. That case observed the truism that there is no First Amendment right to always use amplified sound without limitation. It does not hold every amplification restriction automatically satisfies *Ward*; it reiterates that content-based distinctions draw strict scrutiny. *Id*. Nor could it blanket authorize amplification regulation without flying in the face of *Saia v. New York*, 334 U.S. 558, 561 (1948) ("Loudspeakers are today indispensable instruments of effective public speech").

*Reform America* stands for the proposition that there is no First Amendment protection from arrest when one advertises their ongoing trespassing with a bullhorn. *Id*. ( "[O]fficers were not enforcing a noise ordinance; they were enforcing a policy of separating speakers . . . to prevent potential violence."). Neither party in that case alleged bullhorn volume was

13

at issue. *Id*. Here, because the Complaint plausibly alleges the Ordinance is not narrowly tailored and forecloses effective communication of the Knotts' message in the forum it matters most, the facial challenge states a claim even under intermediate scrutiny.

## II. Because the Complaint Plausibly Alleges Viewpoint-Discriminatory Enforcement, Mere Denial in the Hearing Transcript Does Not Entitle the City to Dismissal at the Pleading Stage.

The City's second major move is to treat selected passages from the hearing transcript as conclusive of motive. According to the City, Sergeant Dobney testified he had "no idea" what words were spoken and the speech's content "did not factor into enforcement." Appellee's Br. at 22-23. From those statements, the City asks this Court to conclude no plausible inference of viewpoint discrimination exists. Appellees ask this Court to resolve, at the pleading stage, a factual dispute about motive.

On a motion to dismiss, well-pleaded factual allegations are accepted as true, all reasonable inferences being drawn in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The transcript cannot erase the Complaint's allegations or convert a Rule 12 motion into a Rule 56 motion. At most, it

14

creates a factual dispute about motive which cannot be resolved against Plaintiffs at this stage.

It is true that when pleadings "internally contradict verifiable facts central to [its] claims," courts may discard those specific allegations as impossible. *Cf. Baily v. City of Ann Arbor*, 860 F.3d 382, 387 (2017). This is why, for instance, video is occasionally considered at the 12(b)(6) stage. *Id.* (citing *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)). But discarding allegations *only* occurs when video "incontrovertibly contradicts" the allegation. *Bogie*, 705 F.3d at 609. Witnesses' disputed testimony does not "incontrovertibly contradict" allegations in the Complaint like an authentic video might.

The City's formulation says "[a]t most, the Knotts offer a competing inference of motive," before asking this Court to adopt their preferred "obvious" explanation instead. Appellee Br. at 26. That is not Rule 12 review. A complaint need not anticipate and repudiate every alternative explanation; it need only plead plausibly. *Iqbal*, 556 U.S. at 678. Plaintiffs

15

allege that officers enforced the Ordinance against one viewpoint while excusing comparable conduct by another.

After the arrest, Sergeant Dobney told Mrs. Knotts her husband would be arrested again if he caused "annoyance" *with or without* amplified sound. Complaint, R.1, Page ID # 9. Even accepting as true Dobney's dubious later claim that he did not know the words spoken through the megaphone and that content "did not factor" into the initial citation decision, that cannot and does not contradict this subsequent threat. The threat is independent evidence of a viewpoint-based motive. It expressly severs future enforcement from any amplification requirement, tying arrest to the subjective "annoyance" produced by Plaintiffs' pro-life message. Taking the Complaint's allegation as true, the statement is direct evidence the enforcement decision was driven by viewpoint hostility rather than a content-neutral application of the Ordinance. Defendants point to nothing contradicting that allegation in the Complaint.

The hearing transcript does reveal that Sergeant Dobney received Mrs. Knotts complaints about others making noise and threats, noting he felt her

16

report was short of "menacing," and merely warranted further observation. Hearing Transcript, R. 1-1, PageID ##53–55, 68–71. Far from a "incontrovertible contradiction" of the Complaint, it confirms officers credited one side's complaints, discounted the other's, and enforced the Ordinance only against Mr. Knotts at a contentious scene. At most, that shows a disputed assessment of competing complaints—the sort of factual issue Rule 12 resolves for the plaintiff. Failure to cite all accused is not itself unconstitutional, but selective enforcement based on viewpoint is. The Complaint plausibly alleges the latter; Dobney's testimony cannot facially erase it.

Viewpoint discrimination "strikes at the heart of the First Amendment" and is presumptively unconstitutional. *Matal v. Tam*, 582 U.S. 218, 246 (2017); *see also Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 831 (1995). Dobney's statement is not a neutral warning about volume; how could it be when another viewpoint continued in their violation of the same Ordinance mere feet away? His stated enforcement rationale is itself circumstantial evidence of pretext sufficient to survive a motion to dismiss.

17

The City responds that "annoyance" appears in the Ordinance's operative disorderly-conduct language, and therefore Dobney's alleged use of that term does not show message suppression. Appellee Br. at 26. That argument only underscores the problem. The Complaint does not treat the word "annoyance" as suspicious, it treats the threatened future arrest for mere "annoyance" with *or without* amplified sound as suspect. No Ordinance that can be used as a roving license to suppress disfavored speech can pass constitutional muster.

The Complaint further alleges explicit differential treatment of similarly situated speakers. Clinic escorts used whistles, kazoos, and other instruments—devices expressly covered by the Ordinance—to drown out Plaintiffs' speech, made threats, and physically interfered with them. Officers observed that conduct, ignored Mrs. Knotts' contemporaneous complaints, enforcing the Ordinance only against Mr. Knotts. Selective enforcement of a facially neutral law based on viewpoint violates the First Amendment and the Equal Protection Clause. *Wayte v. United States*, 470 U.S. 598, 608 (1985); *Stemler v. City of Florence*, 126 F.3d 856, 874 (6th Cir. 1997).

18

The City insists the escorts are not "similarly situated" because the Complaint does not plead measured sound levels, duration, distance, or a resident complaint specifically about the kazoos. Appellee Br. at 24. But Rule 12 requires only that the pleaded facts support a reasonable inference of intentional differential treatment. *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991) (citing *Wayte*, 470 U.S. at 608 n.10 & 609). The Complaint alleges both groups were present at the same location at the same time, both used sound-producing devices covered by the Ordinance, the escorts' noise was intentionally deployed to drown out Plaintiffs' speech, officers observed the escorts' conduct, Mrs. Knotts contemporaneously complained about it, and officers enforced the Ordinance only against Mr. Knotts while dismissing her complaints.

Those allegations are more than sufficient to support the inference that the material distinction was viewpoint. Nothing in the Ordinance requires complaints exclusively from "residents" as a prerequisite to enforcement which could invalidate Mrs. Knotts's complaints. Similarly, requiring precise decibel or distance measurements at the pleading stage would force

19

plaintiffs to prove their claims before discovery. Absurdly, the City demands more forensic specificity from Plaintiffs' Complaint (decibel readings, measured duration, resident-complaint logs for the escorts) than they themselves could provide in their prosecution against Mr. Knotts in the first place.

Indeed, it is that flawed prosecution of the citation through the day of trial which independently supports inference of viewpoint-driven enforcement, supplying a basis for municipal liability through ratification. Despite officers never having witnessed Mr. Knotts megaphone use, and despite Mrs. Knotts' contemporaneous complaints about the escorts' comparable noise and threats, the City maintained the charge for months up until the day of trial, until the charge was dismissed over their objection. That prolonged pursuit establishes that municipal actors reviewed and ratified the original enforcement decision rather than treating it as an isolated mistake by line officers.

Neither *Bible Believers* nor *Gaughan* alters the analysis. *Bible Believers v. Wayne County*, 805 F.3d 228 (6th Cir. 2015) (en banc), involved a classic

20

heckler's veto scenario in which officers silenced speakers to appease a violent crowd. Plaintiffs do not and did not allege that theory. They allege that the City permitted one side's deliberate counter-noise while enforcing the Ordinance only against the disfavored speaker. *Gaughan v. City of Cleveland*, 212 F. App'x 405 (6th Cir. 2007), is an unpublished decision affirming dismissal where the complaint failed to allege that "police acted because of the content of the [plaintiff's] speech." Here, the Complaint contains precisely that allegation—most notably Dobney's explicit threat of future arrest for "annoyance" with or without amplification. The cases are therefore distinguishable, and the viewpoint-discrimination claim survives.

## III.   Individual Capacity Claims Against Dobney and Paratore.

The City contends the individual capacity claims fail for lack of specific allegations and, alternatively, under qualified immunity. Neither argument succeeds.

### A. Specific Conduct

The Complaint does not rely on collective or undifferentiated allegations. It attributes concrete acts to each officer. Both responded to the scene on December 28, 2024. Sergeant Dobney, acting in a supervisory

21

capacity, directed the response, consulted only an off-duty officer employed by the clinic, questioned no other witnesses, and participated in detaining Mr. Knotts. Most significantly, the Complaint alleges Dobney was the officer who told Mrs. Knotts her husband "would be arrested again if he caused annoyance again, with or without amplified sound." Complaint, R.1, PageID # 9.

Officer Paratore actively participated by signing the citation and relying solely on the clinic security officer's account while disregarding the escorts' ongoing use of whistles and kazoos. *Id.* at 5, 8 Neither officer personally witnessed Mr. Knotts use the megaphone; it had run out of batteries before they arrived. *Id* at 8. These are specific, defendant-by-defendant allegations of personal participation in the viewpoint-discriminatory enforcement of the Ordinance. *See Nieves v. Bartlett*, 587 U.S. 391 (2019) (probable cause does not categorically bar First Amendment retaliatory-arrest claims involving viewpoint discrimination).

22

## B. Qualified Immunity

Qualified immunity "is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Defendants never raised it in their motion to dismiss or their reply. The district court therefore erred to the extent it relied on qualified-immunity principles to dismiss the individual-capacity claims.

Even if the defense were properly before the Court, it would not defeat the claim. The law is clearly established that "the government may not engage in a more invidious kind of content discrimination known as 'viewpoint discrimination.'" *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021). An officer may rely on facially valid laws; he may not wield them as instruments of viewpoint discrimination.

Even if qualified immunity had been properly raised, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity" because it turns on facts the court must construe in the plaintiff's favor: the officers' motives. *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015). It is better suited for "summary judgment

23

and not dismissal under Rule 12." *Id*. (citing *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005)).

Dobney's statement alone defeats suggestions that officers merely applied a facially valid ordinance neutrally. Threatening future arrest for causing "annoyance" with or without amplified sound tied future enforcement to the subjective effect of Plaintiffs' message. That allegation, accepted as true, is direct evidence of viewpoint-based motive and is sufficient to state individual capacity claims against both officers. Clearly established law has long held that officers may not use a facially valid regulation as a vehicle for viewpoint discrimination, even when probable cause exists. *Whren v. United States*, 517 U.S. 806 (1996)

. It requires only that the contours of the right be sufficiently clear that a reasonable officer would understand his conduct violates it.

## IV. Municipal Liability is Plausibly Alleged Through Ratification and Custom.

The City attempts to reduce the municipal-liability claim to a "single incident" of ordinary enforcement. The Complaint alleges far more. In addition to ratification via prosecution continued to trial, the Complaint

24

shows a pattern: on multiple prior occasions, opponents of the Knotts'

message used amplified music, threats, and other noise tactics in plain view

of police without consequence. *Complaint*, R.1, Page ID # 6-7.

Municipalities may be liable under § 1983 when official policy,

widespread custom, or a final policymaker's decision is the moving force

behind a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

690–91 (1978). Liability may also attach when authorized municipal actors

approve, adopt, or knowingly continue a subordinate's unconstitutional

decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). The

Complaint plausibly alleges both ratification and custom.

First, the City's months-long prosecution of the citation independently

supports municipal liability through ratification. After the December 28,

2024, citation—issued by officers who never witnessed Mr. Knotts use the

megaphone—the case remained pending until the day of trial in May 2025,

when it was dismissed over the City's objection. The City did not promptly

correct the enforcement decision once the facts were reviewable: that neither

responding officer had heard the megaphone, that the device had died

25

before their arrival, that officers had ignored Mrs. Knotts' contemporaneous complaints about the escorts' comparable noise and threats, and that Sergeant Dobney had threatened future arrest for mere "annoyance" with or without amplification.

Maintaining the charge until dismissed by a judge the day of trial permits the reasonable inference that municipal actors reviewed and ratified the original viewpoint-discriminatory decision rather than treating it as an isolated mistake. *See Coley v. Lucas Cnty.*, 799 F.3d 530, 542 (6th Cir. 2015)

(finding allegations that later actions by different officials supporting the original actor were "sufficient to show that Plaintiffs have established a valid claims under § 1983.").

Second, the Complaint plausibly alleges an unwritten custom of enforcing the Ordinance against pro-life speakers while tolerating comparable or greater noise by clinic escorts. Police previously witnessed escorts using noise-amplification devices and playing music without taking enforcement action. On December 7, 2024, an escort threatened the Knotts and another spat on them while an officer was present and took no action.

26

On December 28, escorts again used whistles, kazoos, and umbrellas to drown out Plaintiffs' message, made threats, and physically interfered with them; officers ignored Mrs. Knotts' complaints and enforced the Ordinance only against Mr. Knotts. Those allegations describe repeated municipal tolerance of one side's comparable noise and obstruction, paired with enforcement against the opposing viewpoint. At the pleading stage, Plaintiffs need not identify every prior instance or prove the full scope of the custom; they need only plead facts permitting a reasonable *Monell* inference. *Coley*, 799 F.3d at 542.

The City's attempt to reduce the case to a "single incident" abstracts away the sequence the Complaint actually alleges: prior non-enforcement against escorts, one-sided crediting of the clinic security officer's account, disregard of contemporaneous complaints, Dobney's express future-arrest threat, and months of continued prosecution. Calling that sequence a single incident does not make it so. The allegations are sufficient to state a claim for municipal liability through both ratification and custom.

27

## V.     The Free Exercise & Equal Protection Claims Independently Survive.

The City adopts the district court's erroneous conception of the Free Exercise and Equal Protection claims as merely derivative of the First Amendment counts. Far from "deriving" from the free speech allegations, the claims rest on the Ordinance's speaker-based exemptions—which clearly and demonstrably affect religious exercise—and the differential enforcement against the Knotts regardless of the Ordinance. Each supplies an independent basis for relief. *See, e.g. Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 523 (2022) ("[The Free Exercise and Free Speech Clauses of the First Amendment] work in tandem. Where the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities. That the First Amendment doubly protects religious speech is no accident.") (internal citations omitted); *Stemler*, 126 F.3d 873 (confirming "the long-established availability of a separate selective enforcement claim under the Equal Protection Clause.").

28

### A. Free Exercise

A law that burdens religious exercise is subject to strict scrutiny unless it is both neutral and generally applicable. *Fulton v. Philadelphia*, 593 U.S. 522, 533 (2021). A law is not generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," or if it creates a system of individualized exemptions. *Id.* at 534. The Ordinance does both. On its face it exempts live outdoor musical or theatrical performances conducted under the auspices of favored institutional speakers while denying the same ability to individual citizens engaged in religious advocacy.

In application, officers tolerated the escorts' use of whistles, kazoos, and other instruments—devices expressly covered by the Ordinance—while citing and threatening further arrest of Mr. Knotts for his pro-life, religiously motivated speech. That combination of categorical speaker-based exemptions and selective enforcement against religious exercise renders the Ordinance neither neutral nor generally applicable.

29

The resulting burden is substantial. The Knotts allege that modest amplification is necessary to make their faith-compelled message audible over traffic and deliberate counter-noise in the precise forum their convictions require them to occupy.

> [A] plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not "neutral" or "generally applicable." Should a plaintiff make a showing like that, this Court will find a First Amendment violation unless the government can satisfy "strict scrutiny" by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest.

*Kennedy*, 597 U.S. at 525 (internal citations omitted). The Knotts have made this showing by demonstrating the City's policy restricts their ability to evangelize near an abortion clinic in a policy which is neither neutral nor generally applicable. Strict scrutiny therefore applies, and the Free Exercise claim survives.

### B. Equal Protection

The Equal Protection claim is likewise independent. Selective enforcement of a facially neutral law based on viewpoint or protected activity states an Equal Protection violation. *Stemler*, 126 F.3d at 874; *see also*

*Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000) (recognizing successful equal protection claims from a "class of one"). The Complaint alleges the Knotts and the clinic escorts engaged in comparable noise-making at the same time and place, yet only the Knotts were cited, and only Mr. Knotts was threatened with future arrest for causing "annoyance" even without amplification. The sole material distinction pleaded is viewpoint.

At the pleading stage, comparators need not be identical in every conceivable respect, merely "similarly situated" and not a member of the "category" at issue. *Stemler*, 126 F.3d at 873. Any greater requirement would thwart the Federal Rules' "liberal system of notice pleading." *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004) (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165-66 (1993) (rejecting heightened pleading standard for § 1983 claims); *Jones v. Duncan*, 840 F.2d 359 (6th Cir. 1988) (holding that § 1983 claims need not set forth in detail all the particularities of a plaintiff's claim against a defendant)). The Complaint need only allege facts from which a reasonable inference of intentional differential treatment can be drawn. The officers' decision to credit only the

31

complaint against the pro-life speakers, to ignore Mrs. Knotts' contemporaneous complaints about the escorts, and to pursue prosecution for months supplies that inference. The Equal Protection claim therefore does not collapse into the First Amendment counts; it independently prohibits the unequal administration of the same ordinance against similarly situated speakers.

Both theories survive on their own terms. The district court's decision to dismiss them as duplicative was error.

## VI.   Dismissal With Prejudice was Abuse of Discretion.

The City defends the with-prejudice dismissal by arguing that Plaintiffs never filed a formal motion for leave to amend and that amendment would be futile. Both contentions miss the mark.

The district court abused its discretion when it dismissed Plaintiffs' federal claims with prejudice on their original, unamended complaint, without any request for that relief from Defendants and without affording Plaintiffs an opportunity to cure potential deficiencies. "[W]here a more carefully drafted complaint might state a claim, a plaintiff must be given at

least one chance to amend the complaint before the district court dismisses the action with prejudice." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003). Dismissal with prejudice and without leave to amend "is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment." *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015).

The Supreme Court has long held that leave should be "freely given" in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

None of those limiting circumstances existed here. This was Plaintiffs' first and only complaint. Defendants' partial motion to dismiss never requested dismissal with prejudice; their reply was likewise silent on the point. Plaintiffs therefore had no occasion to address, much less oppose, the extraordinary remedy the district court ultimately imposed. The opinion and judgment contain no analysis of the *Foman* factors, no finding of bad faith or

33

dilatory motive, and no determination that amendment would be futile. The court simply dismissed Counts I through V with prejudice.

The City relies on cases such as *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776 (6th Cir. 2000), *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008), *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004), and *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435 (6th Cir. 2014), for the proposition that a plaintiff who fails to file a formal motion for leave to amend accompanied by a proposed amended complaint is not entitled to relief. Those cases are distinguishable and do not directly apply.

First, it is not clear when Plaintiffs should have been expected to request leave to amend. Dismissal with prejudice had never been requested, so Plaintiffs did not have an opportunity to respond until the district court ordered it. A request for leave to amend *after* a ruling on a motion to dismiss is untimely, as *Kuyat* says. 747 F.3d at 444. In both *Total Benefits* and *Kuyat*, the Defendant explicitly requested dismissal "with prejudice," and

34

defended that claim in their respective motions.[1] Mot. to Dismiss at 5, *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, No. 1:05-cv-00519, Page ID # 240 (S.D. Ohio Nov. 14, 2006); Mot. to Dismiss at 1, *Kuyat v. Biomimetic Therapeutics, Inc.*, No. 3:11-cv-00653, Page ID # 274 (M.D. Tenn. Feb. 27, 2012). Indeed, this Court has explicitly reversed dismissals when the district court added with-prejudice *sua sponte*, failing to give Plaintiffs "notice of its intention to dismiss with prejudice." *Mich. Surgery Inv., LLC v. Arman*, 627 F.3d 572, 577 (6th Cir. 2010).

Most importantly, in all four of the cases identified by Defendants, the Plaintiff had opportunity to amend: it was *not* the original, unamended complaints that had been dismissed. *See* Amended Complaint, *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, No. 1:05-cv-00519, (S.D. Ohio Nov. 2, 2006); Amended Complaint, *Kuyat v. Biomimetic Therapeutics, Inc.*, No. 3:11-cv-00653 (M.D. Tenn. Nov. 28, 2011); Consolidated First Amended Complaint, *PR Diamonds, Inc. v. Chandler*, No. 1:01-cv-00012

---

[1] The Motions in *Begala* and *PR Diamonds* were unavailable for viewing on PACER.

(S.D. Ohio Aug. 17, 2001); First Amended Complaint, *Begala v. PNC Bank Ohio Nat'l*, No. 1:97-cv-00717 (S.D. Ohio Oct. 14, 1997).

Defendants identify no case in which a plaintiff's complaint was dismissed with prejudice without the plaintiff ever having had opportunity to amend, let alone without opportunity to respond to the request. Here, Defendants never put the question of prejudice in issue. The district court never indicated it was considering anything other than ordinary Rule 12(b)(6) dismissal. A plaintiff is not required to anticipate relief the defendants themselves have not sought. *See Newberry*, 789 F.3d at 646; *Mich. Surgery Inv., LLC*, 627 F.3d at 575 (noting due-process concerns when a court converts a dismissal without prejudice into one with prejudice without notice).

The City's futility argument is entirely circular. It depends on the premise that Plaintiffs' theories fail as a matter of law—the very premise this Court is now reviewing. If any one of the federal claims is viable, or if additional factual detail could cure a pleading deficiency, then amendment is not futile. At the very least, Plaintiffs were entitled to one opportunity to

36

address whatever deficiencies the district court perceived once those deficiencies had been identified. The same analysis applies to the City's argument regarding the state-law claims. If the federal claims are viable, then dismissing the state law claims is inappropriate.

Because the district court dismissed the federal claims with prejudice on an original complaint, without request, without notice, and without applying the governing *Foman* factors, the dismissal was an abuse of discretion. The with-prejudice component of the judgment should be vacated and the case remanded with instructions to permit amendment if any claim is found deficient.

* * *

37

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the district court and remand for further proceedings, or, at minimum, vacate the dismissal with prejudice and remand with instructions to permit Plaintiffs leave to amend the Complaint.

Respectfully submitted,

Geoffrey R. Surtees
**AMERICAN CENTER**
   **FOR LAW & JUSTICE**
P.O. Box 60
New Hope, KY 40052
Tel: (502) 827-0951

Stuart J. Roth
Andrew J. Ekonomou
Christina A. Compagnone
Nathan J. Moelker
/s/ Liam R. Harrell
Liam R. Harrell
**AMERICAN CENTER**
   **FOR LAW & JUSTICE**
201 Maryland Ave. NE
Washington, DC 20002
Tel: (202) 546-8890
Email: lharrell@aclj.org
*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b), this document contains 6,493 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Palatino Linotype.

Dated: August 12, 2026                    <u>/s/ Liam R. Harrell</u>
                                          Liam R. Harrell
                                          *Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 12, 2026, this document was electronically filed with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit and served on all parties or their counsel of record through the CM/ECF system.

Dated: August 12, 2026                     <u>/s/ Liam R. Harrell</u>
                                           Liam R. Harrell
                                           *Counsel for Plaintiffs-Appellants*